BARNARD *vs.* MONNOT.

Although a broker's compensation is earned on the completion of his service, which terminates when the vendor and vendee have *agreed,* yet there must be an agreement by which the parties are legally bound.

On a negotiation for the sale of real estate the parties must agree upon the terms, and the contract must be formally reduced to writing and executed by them, before the broker will be entitled to his commissions.

Where a negotiation, conducted by a broker, is broken off before any binding agreement is entered into between the parties, and thereupon a new contract is executed by them for a part of the property, only, and varying essentially in its terms, from the first, without any agency or intervention of the broker, the latter will not be entitled to a commission.

THIS is an appeal brought by the plaintiff, from a judgment of this court dismissing the complaint, rendered at a trial term thereof, held by Hon. WILLIAM F. ALLEN, on the 8th day of March, 1859. The complaint alleges a *retainer* of the plaintiff as a real estate broker, by the defendant, to negotiate the sale of the large block of ground bounded on the Fifth avenue, Twenty-third and Twenty-fourth streets, in the city of New York, known as the Hippodrome property. That on the 31*st May,* 1855, the defendant and a purchaser met at the plaintiff's office, and the defendant *agreed* to sell, and the purchaser to buy, the whole property for $250,000. That the purchaser was ready to execute a written contract, but the defendant *refused,* but in consequence of that negotiation the defendant, on the 9th of June, 1855, executed to the same purchaser a written contract for part of the prop-

erty for $170,000, and on the 15th June a deed was delivered for such part. That upon such negotiation the usual customary brokers' commission for selling real estate became due to the plaintiff, one per cent upon the price, and demands $2500, with interest from 31st May, 1855. The answer denies that the defendant employed the plaintiff as his broker, or that he ever negotiated, as his broker, any sale, and denies that on the 31st May he agreed to sell, as in the complaint . stated; and alleges that the alleged sale was *merely a negotiation;* that the minds of the parties never met therein. Denies that from any intervention or services of the plaintiff, the defendant made a sale of *part* of the property, but that that sale was made without any intervention or services of the plaintiff, and was founded upon different considerations and terms from the first negotiation. The evidence tended to show that the plaintiff was never retained by the defendant, who was a perfect stranger to him, and the defendant had his own broker to sell the property for him, a Mr. Goodspeed. But that the plaintiff sent for the defendant, writing and sending him letters, and spoke and acted as if he was applying to purchase on his own behalf, or *as broker for Mr. Eno,* his landlord, for whom he had acted largely as broker, and so the defendant was led to believe. On the 31st May, Eno, the purchaser, and the defendant, met at the plaintiff's office, and entered into a preliminary agreement as to the price, provided the defendant was satisfied, upon investigation, that the value which Mr. Eno set upon the property he gave in exchange was fair, and that the leases on it were satisfactory. The defendant had never seen the deeds of the property he was to receive, knew nothing of the dimensions of the lots, had never seen the leases, which turned out to be very complicated and with objectionable provisions in them; the defendant therefore refused to commit himself by a written contract, until he and his lawyer, Mr. Logan, had satisfied themselves as to those matters. On inquiry, the defendant

ascertained that the property, 74 Broadway, which he was to receive as $110,000 in part payment, was over-valued $10,000, of which neither Mr. Eno nor the plaintiff had informed him, and the defendant's wife refused to accede to the sale. There were also objectionable clauses in the leases. For these reasons the defendant refused to complete the negotiation or to sell, and no valid agreement for sale, *in writing*, was made, nor did the *parties' minds ever meet* in the details of negotiation by parol. *After* the negotiation *was ended*, and the parol agreement was declared off, a new negotiation commenced between Mr. Eno and the defendant for part of the property, without not only the agency or intervention, but without the knowledge of the plaintiff. A contract, having no element in common with the first negotiation, but entirely different, was then executed between said Eno and the defendant. The first negotiation was for the whole property for $250,000, for which Mr. Eno was to pay by selling him 555 Broadway, at $120,000, 74 Broadway at $110,000, and $20,000 cash. The second negotiation, and the contract executed under the same, was for *part* of the property at $170,000, for which Eno gave the defendant No. 74 Broadway for $100,000, ($10,000 less than the first negotiation.) Mr. Eno was to assume a mortgage of $80,000 on the property he bought of the defendant. Eno agreed to lend the defendant $50,000, and the defendant was to give Eno a bond and mortgage on 74 Broadway for $60,000, with other special provisions, showing that the two negotiations *were entirely different.*

*H. Barnard,* for the appellant.

*E. Logan,* for the respondent.

*By the Court,* CLERKE, P. J. It appears to me very evident that the plaintiff had no agency whatever in negotiating

the second agreement effected between the defendant and Eno. It was essentially different from the bargain by which the latter was to give $250,000 for the property. It was only for a portion of it; of which the consideration money was $170,000; for which Eno gave the defendant No. 74 Broadway at a valuation of $100,000 instead of $110,000; Eno assuming a mortgage for $80,000 on the property which he purchased from the defendant. He also agreed to lend the defendant $50,000, and $10,000 being due on the difference in the valuation of the property to be exchanged, the defendant agreed to give a bond and mortgage on 74 Broadway for $60,000, with other special provisions. The first negotiation was for the whole property for $250,000, for which Eno was to pay by giving the defendant 555 Broadway at $120,000, 74 Broadway at $110,000, and $20,000 in cash.

It is evident, then, that the terms expressed in each negotiation would make the agreements entirely different. The first was never effectuated, so as to give it the character of a binding agreement. Undoubtedly, the broker's compensation is earned by the completion of his service, which terminates when the vendor and vendee have *agreed.* But it must be an agreement by which the parties are legally bound. Any thing less is merely loose conversation. Parties may agree upon the price, and generally upon the other terms. But many questions remain to be adjusted and investigated, and arrangements to be settled, which can never be properly provided for until the contract is formally reduced to writing; and if the owner of real estate is to be liable for a commission to a broker before the agreement is completed, in this way he may be compelled to pay a great many commissions before he finally disposes of it. He, also, may discover that the purchaser is entirely irresponsible, or that he never intended to complete the agreement, or that he kept up a feigned negotiation for some sinister purpose of his own, or to give his friend the broker a ground for recovering his commis-

sions. Of course nothing of this kind could be predicated of this transaction ; broker, vendor and vendee having conducted the negotiation apparently with the sincere intention of completing an agreement. I only mention these supposed cases to show the necessity of perfecting the agreement, in the method required by law, before the agent should be entitled to his commission. I am, therefore, of opinion that the signing of a contract for the purchase of real property is essential before the broker has a legal right to compensation ; and for this reason, even if the plaintiff adduced testimony of his retainer by the defendant, sufficient to go to the jury, he could not recover any commissions for his agency in the first negotiation.

And with regard to the second, which, as we have seen, was a transaction totally different from the first, and which was completed so as to make it binding on the parties, the plaintiff had no agency in it whatever. Eno, the purchaser, and the plaintiff's own witness, says that the plaintiff had nothing to do with the agreement of the 9th of June, (the one reduced to writing and signed by the parties,) that it was made by him and the defendant personally ; "the plaintiff was not present and had nothing to do with it ; it was made at my office." This is not contradicted ; indeed it is not pretented by the plaintiff that he had any agency in the second negotiation, except, I suppose, so far as he maintains it was only a modification of the first, and that his services rendered in effecting that, entitled him to compensation on the agreement that was finally and legally concluded between the parties. But we have seen that although the first related to the whole property, and the second to a part of it, the transactions were entirely different.

The plaintiff, therefore, failed to make out his case ; and the judge properly dismissed the complaint.

I have not thought it necessary to inquire whether the plaintiff produced any evidence sufficient to go to the jury on the

subject of the retainer. Even if he did, which I very much doubt, his case, for the reason above stated, would be incomplete.

. The judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, February 4, 1861. *Clerke, Sutherland* and *Ingraham*, Justices.]