JOHN MIDDLETON AND SAMUEL P. MIDDLETON *v.* JAMES FINDLA.

NAME OF GRANTOR IN DEED.—If the grantor's true name is recited in the body of a deed, and he also acknowledges it by his true name, the fact that he signs it by a wrong name does not invalidate the conveyance.

AUCTIONEERS—THEIR COMPENSATION FOR SERVICES.—One representing himself as the owner of real estate, who employs an auctioneer to sell the same under an agreement that in the event of a sale the auctioneer shall receive for his services a percentage on the amount bid, cannot, after a sale by the auctioneer, avoid paying him for his services because the purchaser refuses to take the property, owing to a real or alleged defect in the title.

IDEM.—The auctioneer in such case is entitled to compensation for his services, unless there is a special agreement that it shall depend on the consummation of the sale.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. B. Crockett,* for Appellant.

The rule appears to be well settled that a broker is not entitled to commissions unless a *sale is effected and completed,* provided the failure does not arise from the conduct of the seller. (*Blanc* v. *Improvement Bank,* 2 Robinson, La. 63 ; *Didion* v. *Duralde,* 2 Robinson, La. 163 ; *De Santos* v. *Taney,* 13 La. 151 ; *McGavock* v. *Woodlief,* 20 How. U. S. 221 ; *Pricket* v. *Badger,* 37 Eng. Law and Eq. 428 ; *Broad* v. *Thomas,* 7 Bing. 99 ; *Read* v. *Riven,* 10 Barn. & Cress. 438.)

This appears to me to dispose of the case. But I invoke, also, another principle. The right to commissions depends on the fact whether or not the respondents have done all they agreed to do, as the condition on which commissions were to accrue. They say they have; because, as they aver, they only undertook to find a purchaser willing to take the property at the stipulated price, and that they found such a purchaser, but he refused to take it from no fault of theirs. Now, however they understood the contract, it is quite evident the appellant did not so understand it. His understanding

was that he was to pay no commissions unless the sale was actually *completed*.

The rule I invoke is, that performance of a condition precedent must be shown with such certainty that the Court may judge whether the *intent* of the contract has been fulfilled. (1 Chit. Plead. 32 ; Com. Dig. Tit. Pleader, C. 58.)

*Haight & Pierson*, for Respondent.

The rule is very well stated in the case of *Glentworth* v. *Luther*, 21 Barb. 145 : "One who is employed as a broker to sell real estate, in the nature of things, can do nothing more than to find a party who will be acceptable to the owner, and enter into a contract of purchase with him ; unless the owner makes him more than a mere broker by giving him a power of attorney to convey the property, and then the agent would cease to be broker and become the attorney.

"*A broker becomes entitled to his commissions whenever he produces to his principal a party with whom the owner is satisfied, and who contracts for the purchase of the property at a price acceptable to the owner.*

"If, after that, the purchaser refuse to perform because of the false representations of the owner respecting the property, this will not deprive the broker of his commissions."

By the Court, CURREY, J.

From the pleadings and evidence in this case it appears that in September, 1862, the respondents were partners, doing business in the City of San Francisco as auctioneers and brokers, and that the appellant, who was the owner of a storehouse and lot of land in that city, employed them to advertise and sell this property for him. The contract between the parties was, in effect :

First—That the storehouse and lot should not be sold for a less sum than twenty-two thousand five hundred dollars.

Second—That if the property was sold for that sum only,

Middleton *et al. v.* Findla.

the appellant would pay the respondents for their services the sum of five hundred dollars, and the expenses of advertising the sale.

Third—That if the property was sold for a sum exceeding twenty-two thousand five hundred dollars, the appellant would pay the respondents the sum of two and a half per cent of the amount of the price for which the same should be sold, and the expenses of advertising the sale.

In pursuance of this contract the respondents advertised the property for sale at auction, and afterward sold the same to one Goldstein, who was the highest bidder therefor, for the price of twenty-four thousand and fifty dollars. Before the sale it was announced by the respondents, in the presence of the appellant, to the persons in attendance, that the purchaser would be required to deposit ten per cent of his bid immediately after the property was struck off to him, and that the title would be subject to legal investigation.

The terms of payment at which the appellant, by his agents, the auctioneers, offered the property for sale were half cash, and the balance in three years at one per cent per month.

The purchaser, instead of depositing ten per cent of the purchase price, deposited only five hundred dollars, with which the respondents were satisfied, as he was regarded by them as a person able at any time to respond to his engagements.

The abstract of the appellant's title to the property was placed in the hands of Goldstein's legal adviser for examination, who afterward decided and reported the title defective, because the copy of one of the deeds under which the appellant claimed, and which purported in the body of it to have been made by *Edward* Jones, appeared in such copy and in the book of records as signed by *Edmund* Jones. By the certificate of the proof of the execution of this deed, it appears that the execution thereof was by *Edward* Jones. Because of the supposed defect, Goldstein refused to complete the purchase; and after this, about the 10th of October, 1862, the appellant

made out and tendered to him a deed for the property, duly executed, but Goldstein still refused to accept the deed and complete the contract on his part.   Before the deed was so tendered, one Wood applied to the appellant to purchase the property at the sum of twenty-four thousand dollars, and after the refusal on the part of Goldstein the appellant contracted to sell it to Wood for that sum, and afterwards, on the 24th of October, conveyed the same premises to him by deed, which was recorded.   Upon discovering that appellant had sold to Wood, the respondents returned to Goldstein the five hundred dollars received from him.   The respondents then demanded payment of the commission of two and a half per cent, on the twenty-four thousand and fifty dollars bid by Goldstein, and the expenses of advertising the property for sale.   The appellant refused payment, and the respondents brought their action for the recovery thereof.   The cause was tried by the Court without a jury, and a finding and judgment was rendered for the respondents against the appellant for the amount.   A motion was made for a new trial and denied.

The ground on which the appellant relies for a reversal of the judgment is that the evidence did not justify the finding and judgment, and that therefore the judgment is contrary to law.

There seems to be no material conflict in the testimony of the witnesses, and the question is directly presented whether the pleadings and evidence justified the finding of the Court and the judgment thereon entered.

There was a memorandum of the sale sufficient to obviate any objection that might have arisen under the Statute of Frauds as to the binding effect of the contract of sale and purchase ; and so the counsel for the parties have seemed to consider the matter in all the stages of the case.

The property was offered for sale by the respondents, in pursuance and fulfilment of their engagement with the appellant, and upon the implied assurance on appellant's part, to the person who might desire to purchase, that the title was

good and valid; and in order to give the purchaser, whoever he might be, an opportunity to examine the title, it was announced at the sale that the property would be sold, "subject to legal investigation"—which means in such cases neither more nor less than that the purchaser would buy with the privilege reserved on his part to decline the bargain if he discovered on examination of the abstract that the title of the vendor of the property was defective. The purchaser in such a case would not be justified in making a captious objection to the title, because perhaps he might, after the property had been struck off to him, repent his bargain—but having purchased on condition that the title was good, he must abide his agreement, if in fact the title be free from valid objections.

Upon offering the property on the terms mentioned, a purchaser appeared who agreed to pay for it the sum of twenty-four thousand and fifty dollars. By this agreement he became bound to pay this sum unless it was ascertained as a truth that the appellant's title was defective.

In determining upon questions of title, mere possibilities, it has been said, are not to be regarded; the Court which is called upon to decide must govern itself by a moral certainty, for it is impossible in the nature of things that there should be a mathematical certainty of a good title. (*Lyddal* v. *Weston*, 2 Atkyns, 19; *Hillary* v. *Waller*, 12 Vesey, 239; *Sperling* v. *Trevor*, 7 Vesey, 498.)

It appears from the testimony of one of the respondents, and also from that of the appellant, that the only objection made by the purchaser to the appellant's title was that there was a discrepance between the name of the grantor as written in the body of one of the deeds constituting appellant's chain of title, and the name as subscribed to it; and it appeared also by the testimony that the proof of the execution of the deed, as found upon the record, was that it was executed in fact by *Edward* Jones. *Edward* Jones was the person through whom, it would seem from the case, the appellant claimed title, and he it was who executed the deed by the name of *Edmund* Jones, as shown by the certificate of the proof of the execu-

tion thereof. If the record contained a true copy of the deed, and of the certificate of the proof of the fact of its execution, as we must presume it did in the absence of the deed itself, then its execution by *Edward* Jones was established, notwithstanding the use by him of another Christian name than his own, and the alleged defect was harmless. (*Addy* v. *Grix*, 8 Vesey, 504; *Harrison* v. *Harrison*, 8 Id. 185; *Baker* v. *Dening*, 8 Adol. and Ellis, 94; *Merchants' Bank* v. *Spicer*, 6 Wend. 446; *Brown* v. *Butchers' and Drovers' Bank*, 6 Hill, 443.)

No other objection seems to have existed on the part of the purchaser, and the one made being invalid, the sale of the premises to him became effectual and complete as a contract of sale. This being so, the right of the respondents to compensation for their services at the rate stipulated, follows of course.

But, independent of the fact that the sale of the property became discharged of the condition that postponed the time for the consummation of the contract between the vendor and vendee, we are of opinion the right of the respondents to the commission agreed upon for their services did not depend upon the fact that the title was good and valid. The contract between the parties was not that the respondents should take any risk as to the validity of the appellant's title. In the case of the *Monte Allegre*, 9 Wheat. 644, Mr. Justice Thompson said: "A merchant who employs a broker to sell his goods, knows or is presumed to know the state and condition of the article he offers for sale;" and upon the same principle he is presumed to know whether or not he has title. So when one employs an agent to sell real property which he represents he owns, he cannot, in the absence of an agreement to that effect, deny to his agent compensation for his services in making a sale because the title may prove defective and thereby defeat the sale. This would not be reasonable, but would be unjust.

Then when a person representing that he is the owner of property, places it in the hands of an agent to be sold, and the agent makes a sale of it in accordance with the instructions of his principal, or in pursuance of the terms of the agreement between them, he is entitled to compensation for his labor.

11

The amount of the compensation will depend upon the contract, if there be one in respect to it; or in the absence of any agreement on the subject, it will be measured by the value of the services rendered.

When the sale was made by the respondents, as appears by the evidence, their work was done, and they were entitled to the wages they had earned. . (*Glentworth* v. *Luther*, 21 Barb. 147 ; *Bernard* v. *Minnot*, 34 Barb. 93.)

Mr. Justice SHAFTER expressed no opinion.