## CITY OF LITTLE ROCK v. BARTON ET AL.

1. BROKERS: *Who are. Power of Municipal Corporations to tax.*
   A dealer in real estate for others is a broker, and the City of Little Rock has the power to require such to pay license for following the occupation within her limits.

2. *Property of citizens held subject to police power.*
   Every citizen holds his property subject to a proper exercise of police power either by the Legislature directly or through public corporations to which the Legislature may delegate it.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*Dodge & Johnson* for appellant.

*Rose, contra.*

TURNER, S. J. :

The plaintiffs on behalf of themselves and others interested, state that they reside in the city of Little Rock and severally carry on the business of Real Estate Agents in said city : that their business is to buy and sell lands for others ; to rent out real property, and to collect the rents on the same, and pay taxes, and does not extend beyond these objects.

City of Little Rock vs. Barton et al.

That on the 6th day of January, 1876, the defendant by resolution defining the term "*broker*" declared that every person or firm who buys or sells scrip, bonds or exchange, pays taxes at a discount or profit, shall be considered a *broker*, and shall pay one hundred dollars per annum, in currency, in advance, and that any person violating its provisions shall be fined in each and every instance twenty-five dollars, as will appear by reference to the resolution exhibited with and made part of the complaint.

That on the 26th day of December, 1876, the defendant passed an ordinance for the better regulation of licenses in the city of Little Rock for the year 1877, which provides, among other things, that it shall be unlawful for any person to exercise or pursue any of the following avocations without first having obtained a license therefor, from the proper city authorities, and having paid for the same in gold, silver or United States currency ; each money broker, land broker, tax broker, exchange broker or other brokers or bankers, one hundred and twenty-five dollars per year, in advance ; providing also penalties for carrying on either of said pursuits, as appears by a copy thereof exhibited with the complaint.   The plaintiffs say they buy and sell lands and pay taxes for others for a commission or compensation, but they say they are not brokers in the legal sense of the word, and that the said tax, as attempted to be imposed on them, is wholly illegal ; and yet, they say, that the defendant, by her ·agents and officers, is endeavoring to make them pay  said illegal tax by arrest and imprisonment, which they say is without any legal sanction whatever, and that plaintiffs believe that the defendant will proceed to enforce the payment· of  said taxes if not restrained from doing so by this court.   Wherefore plaintiffs pray that the said defendant and her agents and officers may

be enjoined and perpetually restrained from levying and collecting the said tax.

On the 11th January, 1877, the defendant filed a demurrer to the complaint, which demurrer was overruled. Whereupon the court granted a temporary injunction and restraining order in conformity to the prayer of the complaint.

On the 26th day of June, 1877, the defendant filed her response to the complaint, admitting the passage by the city council of the city of Little Rock, of the ordinances and resolutions exhibited with the complaint, but alleging that under section 12 of an act of incorporation, passed and approved March 9th, 1875, she has full power and authority to pass such an ordinance, and that the same is now in full force in pursuance of said authority.

Defendant denies that the sole business of the plaintiffs is to buy and sell lands for others, to rent out real estate and to collect the rents, and to pay taxes for others; and defendant charges the truth to be, that they are, each and every one of them, in addition to, and in connection with the said real estate business, either money brokers, scrip brokers, tax brokers, exchange brokers or bankers, under the provision of section 16 of said city ordinance above referred to, and that all of said parties buy and sell scrip, both city, State and county, as brokers, having offices for such purposes, and that they pay taxes on lands at discount as land brokers, so advertised to the public; that they sell lands on commission at certain fixed rates as land brokers, and that they so hold themselves out to the public.

Wherefore, defendant says that she ought not to be enjoined from enforcing the collection of said license tax by said ordinance provided for. Because, she says : the said parties are engaged in a privileged kind of business, which the defendant has, by the general and special laws of Arkansas, the right,

power and authority vested in her to tax and license, and that the same is a fixed and important source of her yearly revenues, by which she is enabled to take care of the property and the rights of the inhabitants thereof ; therefore prays that the temporary injunction heretofore issued may be dissolved, etc. ; and plaintiff demurs to the complaint for the following reasons :

1st. That this court has no jurisdiction of the subject matter of the complaint.

2d. That the same does not set up facts sufficient to authorize the granting of the relief ; and

3d. Because there is no equity in the complaint.

The depositions of a number of witnesses were taken and read on the hearing of the cause.

John Ingram, one of the plaintiffs, stated, that he was a real estate agent, carrying on business in the city of Little Rock at this time ; has been engaged in that business since March, 1875 ; that his principal business was furnishing abstracts of title, looking up homestead lands, and keeps lands on sale ; has sold some town property, but not within the last two years. Has not been engaged in selling personal property for others. Has not been engaged in selling bonds, notes or other commercial securities. Has not been engaged in any brokerage business. Has real properly on sale. When parties apply for certain class of lands, witness takes the description and supplies them with it if he can find a piece to suit, charges a regular fee, but not a commission. It is part of his business to negotiate sales of lands for private individuals, in which he charges in accordance with the services rendered.

David Reeve, one of the plaintiffs, stated that he was doing business in the city of Little Rock, principally paying taxes for others, and also deals in scrip, rents property, collects rents, and offers to sell lands for others, but has sold none during the past year. Has been in the business about four years.

The scrip that he buys and sells is on his own account, or on account of his firm. He is of the firm of Reeve & McCabe. They have attempted to negotiate the sale of real estate in a few instances, for other parties, but have not made a single sale. They pay taxes to a considerable extent for others, pay the taxes at a discount from the face of the tax receipt. Think that 203 loans for other parties, based upon collateral security, have been arranged in their office, but that they make no charge for this. It is no part of their business to negotiate loans.

The advertisement of their business, published in the Little Rock Gazette, is as follows:

"Real Estate and Tax-paying Agency. D. Reeve, M. D. "McCabe. Reeve & McCabe, Real Estate and Tax-paying "agency, 106 West Markham street, Little Rock, Ark. Buy "and sell scrip and bonds of all kinds; pay taxes and licenses "of all kinds at the lowest possible rates; also, rent, lease or "sell property on the most reasonable terms."

The sign, at their door, is marked Real Estate Agents and Brokers. D. REEVE.

S. N. Marshall, one of the plaintiffs, stated that his business is principally insurance, also does something in real estate and paying taxes. In real estate he proposes to buy and sell on commission. Doesn't buy or sell for others any scrip or bond, or other securities; pays taxes at a discount from the face of the receipt. Has been engaged in this business five or six years; has never negotiated a loan, nor attempted to do so for others. In one or two cases where he was personally interested to make collections, he found out where the money could be loaned and it was done, and he made his collection out of it; where these loans were made he received no commission.

J. H. Haney, one of the plaintiffs, stated that his business was that of real estate agent. That includes principally paying taxes, collecting rents and selling lands, and business in the

land office in Little Rock. Buys scrips for the purpose of paying taxes. Pays taxes for others and charges a commission therefor. Does not hold himself out as a broker.

J. H. Barton, one of the plaintiffs, stated that his business was that of real estate agent. Buys and sells real estate in Little Rock and throughout the State. When he sees an opportunity to buy real estate cheap he purchases to sell again. Pays taxes for others, which is part of his real estate business. Has been carrying on the business about eight years in the same manner. In buying and selling real estate he does not buy for others. Has in his possession lists of lands for others which he endeavors to sell. Charges a commission for selling real estate. Agrees to pay taxes at a fixed sum less than the face of the receipt, the discount being controlled by the value of the scrips at the time. Purchases the scrips himself for the purpose of paying such taxes.

And this was all the evidence in the cause.

The demurrer to the complaint was overruled by the court and on the final hearing of the cause the injunction was made perpetual, and the defendant appealed to this court.

The jurisdiction of the court of chancery in this cause, we think, is unquestionable. For although there may have been a remedy at law, and we think there was, the Legislature, by the Act of 1873 to amend the Code of Practice in civil cases, in express terms, confers the jurisdiction in question.

Section 296 of that Act declares: "That the Judge of the Circuit Court for any county, may grant *injunctions* and *restraining* orders in all cases of illegal or unauthorized taxes and assessments by county, city, or other local tribunals, boards or officers.

And this provision of the Act of 1873, is strongly fortified by Art. 16, Sec. 13 of the Constitution of 1874 which provides, "That any citizen of any county, city or town may institute

suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exaction whatever."

In order to carry out and make effective sec. 12 of the Act of 1875, the City Council of the City of Little Rock, on the 26th of December 1876, passed an ordinance for the better regulation of *licenses* in the City of Little Rock, which, among other things, ordained that it shall be unlawful for any person to exercise or pursue any of the following avocations or business, to-wit: money broker, land broker, scrip broker, exchange broker or banker, without first having obtained a license therefor from the proper city authorities and having paid for the same in gold, silver or United States currency $125 per year in advance ; and further provided that any person exercising any of the privileges for which a license is required without first obtaining the same, shall be fined in any sum from two to twenty-five dollars for the first offense and double that amount for subsequent offenses.

See ordinance sec. 16 and 34.

These avocations and pursuits are not within the scope of State taxation for State purposes, for in such cases the taxes must be uniform and according to the value of the property taxed, but they are subjects of police regulation, and if licensed at all, it is done in the exercise of the police power, which is deemed necessary and proper for the government and well-being of all municipal corporations, and in such cases, these avocations and pursuits are *licensed* and not *taxed* as property.

What are called police powers relate mostly to the government of municipal corporations

Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storage of

dangerous articles, to establish and control markets and the like.

And it may here be observed 'that every citizen holds his property subject to the proper exercise of this power either by the State Legislature directly, or by public corporations to. which the Legislature may delegate it ; and although laws and regulations of this character may disturb the enjoyment of individual rights, they are not unconstitutional, though no provision is made for compensation for such disturbance. They do not appropriate private property for public use, but simply regulate the use and enjoyment of it by the owner. The citizen owns his property absolutely it is true ; it cannot be taken from him for any private use whatever without his consent, nor for any public use without compensation, but he owns it subject to this restriction ; that it must be so used as not to injure others, and that the soverign authority may by police regulations so direct the use of it that it shall not prove pernicious to his neighbors or the citizens generally. Sec. 1, Dil. Mun. Corp., sec, 93, and marginal references.

The matters enumerated in section 12 of the Act of 1875, including those enumerated in section 16 of the ordinance of 26th December, 1876, are the propei subjects of police regulation, and as such, may be licensed under the authority of the municipal government.

The authority of the Legislature to regulate the exercise of privileges or the following pursuits and occupations does not fall properly within its taxing powers, but within its police powers. Pursuits that are detrimental may be prohibited altogether, or licensed for a compensation to the public. So. persons desiring to exercise privileges or engage in callings really useful to society, may be required to obtain license, and pay a reasonable compensation therefor : Such as the keeping

of ferries, draymen, hackmen, and even persons who furnish meat and bread to communities. Cooley on Con. Lim., 200.

The power of the corporation of Little Rock to license *brokers* and to require the payment of a fixed sum for the privilege of carrying on the business of broker, we think, is clearly granted by section 12 of the Act of March 9th, 1875, and the authority for this grant may be found in section 23, article 11, of the Constitution of 1874, which provides that "The State's ancient right of eminent domain and of taxation is herein fully and expressly conceded, and the General Assembly may delegate the taxing power with the necessary restrictions to the State's subordinate political and municipal corporations to the extent of providing for their existence, maintenance and well being."

The plaintiffs stated that they resided in the city of Little Rock and severally carry on the business of real estate agents in said city. That their business is to buy and sell lands for others, to rent out real property and to collect the rents and to pay taxes for others, and that their business does not extend beyond these objects.

The depositions read at the hearing fully sustain the allegations of the complaint, enlarging it is true, somewhat, the operations of the plaintiffs and being more precise in description, and in one instance, that of Reeve & McCabe, it is shown that the sign of "*Real Estate Agents and Brokers*" appears at the door of their office

What then and who is a broker in the legal acceptation of the term ?

Lord Ch. Baron COMYNS, of the Court of Exchequer, in his Digest of the laws of England, defines brokers to be "persons employed among merchants to make contracts between them and fix the exchange for payment of wares sold or bought." See 5 *Comyns' Dig.* 78.

Burrill, in his law dictionary published about thirty years ago, describes a broker as "one who makes a bargain for another and receives a commission for so doing." *Tindall*, *C. J.*, *Bing.* 702, 706. An agent employed among merchants and *others* to make contracts between them in matters of trade, commerce or navigation, for a commission commonly called *brokerage. Russell on factors* 3, 4. *See also Story on Agency.* A broker is not in general authorized to act or con- tract in his own name, nor is he entrusted with the possession of what he is employed to sell, or empowered to obtain possession of what he is employed to purchase; but he acts merely as a middleman or negotiator between the parties and in those respects he is distinguished from a factor. 2 *B.* and *Ald.* 137, 143. *Russell on Fact.* 4. 2 *Kent Com.* 622.

"The earliest definitions of this term (*broker*) confine the employment of brokers to dealings *between merchant and merchant.* Thus by the Statute 1 Sec. 1 Ch. 21, brokers are described to be persons employed by "*Merchants* English and *Merchants* strangers in contriving, making and concluding bargains and contracts between them, concerning their wares and merchandizes and moneys to be taken up by exchange between such merchants and merchants tradesmen." *Russell on Fact.*

These definitions, however appropriate at a period when merchandize and exchange brokers appear to have constituted the only classes of this description of agents, have been very properly regarded by modern writers as too limited to include the various classes of brokers recognized at the present day; although in a late case in England the Court of Exchequer seemed disposed to abide by the ancient interpretation of the term." *Sec.* 16, *Meeson & Wellsby* 174, *See Burrill's Law Dict.* 229.

Bouvier says, that brokers are those who are engaged for

others in the negotiation of contracts relative to *property* with the custody of which they have no concern. *Paley's Agency*, 13.

A broker is for some purposes treated as the agent of both parties ; but in the first place he is deemed the agent only of the person by whom he is originally employed, and does not become the agent of the other until the bargain or contract has been definitely settled as to the terms between the principals." *Payley's Ag. Lloyd ed.* 171 *note p.* 13 *Met.* (*Mass.*) 463.

*Bill and Note Brokers* negotiate the purchase and sale of bills of exchange and promissory notes.

*Exchange Brokers* negotiate bills of exchange drawn on foreign countries or on other places in this country.

*Insurance Brokers* procure insurance and negotiate between insurers and insured.

*Merchandise Brokers* negotiate the sale of merchandise without having possession or control of it as factors have. This is the original broker as defined by the earlier law writers ; now mentioned simply as a *class* of brokers.

*Pawn Brokers* lend money in small sums on the security of personal property.

*Real Estate Brokers.* Those who negotiate the sale or purchase of real property. They are a numerous class, and in addition to the above duty, sometimes procure loans on mortgage security, collect rents, and attend to the letting and leasing of houses and lands.

*Ship Brokers* negotiate the purchase and sale of ships and the business of freighting vessels. Like other brokers they receive a commission from the seller only.

*Stock Brokers.* These are employed to buy and sell shares of stocks in incorporate companies and the indebtedness of governments. Bouvier's Law Dict., 224.

Webster defines a broker as :

1.  One who transacts business for another ; an agent.

2.  An agent employed to effect bargains and contracts as a middle man, or negotiate between other persons for a compensation commonly called *brokerage*.   He takes no possession as broker of the subject-matter of the negotiation.   He generally contracts in the names of those who employ him, and not in his own.

*Broker*, simply so called, one who sells or appraises household furniture destrained for rent.

*Bill Broker*, ono who buys and sells notes and bills of exchange.

*Exchange Broker*, one who buys and sells uncurrent money and deals in exchanges relating to money.

· *Insurance Broker*, one who is agent in procuring insurance on vessels or against fire.

*Merchandise Broker*, one who buys and sells goods ; one who advances money at interest upon goods taken in pledge.

*Real Estate Broker*, one who buys and sells lands and obtains loans, etc., upon mortgage.

*Ship Broker*, one who deals in buying and selling ships, procuring freight, etc.

*Stock Broker*, one who deals in stock of moneyed corporations and other securities.   Cites McCullock, Wharton, Simmons, New Am. Cyclo.   See Webster's Dict. Eng. Lang. p. 167.

We may thus see that the ancient definition of *broker* has been enlarged and extended greatly beyond its original limits.

Instead now of being confined, as in the time of Chief Baron Comyn, to "persons employed among merchants to make contracts between them and to fix the exchange for payment of wares sold or bought," it is extended to almost every branch of business, and this as a necessity growing out of the increas-

ing exigencies of commercial business. In its modern and enlarged signification it embraces the buying and selling, and dealing in real as well as personal estate, and may as well, we think, include real estate agents as persons employed among merchants to make contracts between them and to fix the exchange for payment of wares sold or bought.

Looking at the distinctive character of a broker as a middleman and agent for the sale of property and the transaction of business for others, we fail to see any reason in principle why the dealer in real estate for others may not as legitimately be called a broker as a person employed to make bargains and contracts in matters of trade, commerce or navigation.

So we find that real estate brokers "or persons who sell real estate for others," are often called simply "brokers."

In the case of *Pierce* v. *Thomas and others*, 4 E. D. Smith's N. Y. R., the plaintiff, a broker, sought to recover commissions from the defendants for the sale of certain real estate, without showing an employment to sell, or such an adoption of his acts or acceptance of his services by the owner as is equivalent to an original employment. The court, by WOODRUFF, J., said: "To entitle a *broker* to recover commissions for effecting a sale of real estate it is indispensible that he should show that he was employed by the owner (or on his behalf) to make the sale. A ratification of his act, where original employment is wanting, may, in some circumstances, be equivalent to an original retainer, but only when there is a plain intent to ratify.

In the case of *McGavock* v. *Wodlief*, 20 How. U. S. Sup. Ct., 221, the court, in deciding that a *broker* who negotiates the sale of an estate is not entitled to his commission until he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between the broker and the vendor, uses the following language: "The

*broker* must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on before he is entitled to the commission. In this case the event speaks of the person employed to negotiate the sale for another simply as a *"broker."*

In the case of *Farnsworth* v. *Hemmer*, 1 Allen (Mass.) 494, which was a suit by a real estate broker to recover commissions for his services in negotiating an *exchange of land* between the defendant and one Cooper. Here also the real estate broker is simply styled a *"broker."*

In the the case of *Glentworth* v. *Luther*, 21 Barb. 145, which was an action by the plaintiff to recover his commission as a broker for negotiating the sale of a *house and lot* in the City of New York, Cowles, J., said: There can be no doubt as to the extent of the duties to be performed by one who as *broker* is employed to sell real estate. In the nature of things he can do nothing more than find a party who will be acceptable to the owner and enter into a contract of purchase with him; unless the owner makes him more than a *broker* merely, by giving him a power of attorney to convey the property and then the employee would cease to be merely a broker, and become the attorney. The *broker* employed to sell real estate is in this case called simply a *broker*. See, also to the same effect, Doty vs. Miller, 43 Barber, 529. Middleton vs. Findla, 25 Cal. 76. Morgan vs. Mason, 4 E. D. Smith 638. Clapp vs. Hughes, 1 Phil. (Pa.) 382.

So we see that the term *broker* has long been indifferently applied to those who buy and sell real estate for others, and those middlemen who negotiate and make contracts between merchants in the interest of commerce, trade and navigation.

At the time of the passage of the act of March 9th, 1875, and long previously, the modern and enlarged meaning of the word *broker*, had been accepted and recognized by the courts,

as a part of the law of the land, including in this extended interpretation of the meaning of the word broker, not only what are called real estate agents or brokers, but every other description of broker, except perhaps *pawnbrokers*, who are strictly not brokers at all, not falling within any of the definitions of the term broker.

We are of the opinion that under the power conferred upon the corporation of Little Rock by Sec. 12 of the Act of 1875, it was competent for the corporation to license the plaintiffs as brokers and to require of them to pay respectively the sum mentioned in Sec. 16 of the ordinance of the City Council for the privilege of pursuing their business as brokers.

Having arrived at this conclusion we are of opinion that there is error in the decree of the Chancellor and we do therefore reverse said decree and remand the cause, with instructions to the Chancellor to dissolve the injunction and restraining order herein, and dismiss the complaint.

Hon. J. R. Eakin, J., did not sit in this cause.