LAWRENCE GAS COMPANY, Appellant, v. HAWKEYE OIL COMPANY, Appellee.

BROKERS: Employment and Authority—Non-Presumption of Authority to Receive Payment. He who buys property of another through a broker and pays the broker must be prepared to show that the broker had *express* authority to receive payment, or that the circumstances were such as to fairly *imply* such authority. Evidence reviewed, and held insufficient to show such authority.

1

PRINCIPAL AND AGENT: Powers of Agent—Commission Merchant—Brokers—Powers Contrasted. Powers of agents, commission merchants, and brokers, reviewed and contrasted.

2

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

DECEMBER 18, 1917.

ACTION to recover the amount due on a shipment of oil. Defense, plea of payment. Opinion states the facts. Judgment for defendant in the court below. Plaintiff appeals. —*Reversed.*

*W. T. Frame* and *Edwards, Longley, Ransier & Smith,* for appellant.

*Mears & Lovejoy,* for appellee.

1. BROKERS: employment and authority: non-presumption of authority to receive payment.

GAYNOR, C. J.—The plaintiff, Lawrence Gas Company, is an Illinois corporation, with its principal place of business at Indianapolis, Indiana. The defendant, Hawkeye Oil Company, is also a corporation, and its principal place of business is at Waterloo, Iowa. A. T. Stewart Company is a brokerage firm, and its principal place of business is at Chicago, Illinois.

On January 6, 1914, the defendant, Hawkeye Oil Company, sent the following order to the brokerage firm of A. T. Stewart Company:

"To A. T. Stewart Co., 512 Postal Tel. Bldg., Chicago, Ill.

"Ship at once to The Hawkeye Oil Company, Waterloo, Iowa, 2 cars 72° gasoline at 13.65c f. o. b. Waterloo, Iowa.

"Waterloo, Iowa, 11-24-13."

This order was received at the A. T. Stewart Company in due course of mail. A. T. Stewart Company were merchant oil brokers, and soon after the receipt of this order, placed the same with the plaintiff, the Lawrence Gas Company, and the Lawrence Gas Company shipped the gasoline therein ordered to the Hawkeye Oil Company, and it was received by it at its home place.

It appears that there had been some prior arrangements between the A. T. Stewart Company and the plaintiff, Lawrence Gas Company, for the handling of the output of the plaintiff company by the A. T. Stewart Company, on a basis of one-quarter cent per gallon commission, A. T. Stewart Company to act as brokers in all transactions, with power to procure orders for plaintiff's product, send the orders to the plaintiff company, and upon receipt of such orders, the goods to be billed directly to the purchaser. The A. T. Stewart Company never had possession of, or control of, any of the products of the plaintiff company.

The president of the Hawkeye Oil Company testified:

"I knew from whom this carload of oil had been shipped. We had a bill of lading and an invoice to show that it had been shipped by the Lawrence Gas Company."

The original invoice received is in the following words and figures:

LAWRENCE GAS COMPANY.
High-Grade Gasoline.
Bridgeport, Illinois, December 26, 1913.

Sold to Hawkeye Oil Co. Waterloo, Iowa.

Terms: 30 days Net 1% 10 days. f. o. b. Waterloo.

One tank car 72-74 Straight Run Gasoline G A T X 4170.

|  |  |  |  |
|---|---|---|---|
|  |  |  | 995.19 |
| 8,000 Gallons |  | at 13.65c | $1,092.00 |
| Shortage   432 |  | .50 |  |
| 7,568 |  | 13.15 |  |
| 8,000 gals. at 6.6, 52, 800 # | at 24c Less Frt. |  | 126.72 |
| A. T. S. Order # 854 |  |  |  |
| H. O. Co. Order # 5082 |  |  | $ 868.47 |
|  | 15440 | 1% | 8.68 |
|  | 127.69 |  |  |
| Recd. 1-7-14 | Jan. 7, 1914 |  | 859.79 |
|  | # 15251 |  |  |
|  | P J 24 |  |  |

He further testified:

"I knew that the A. T. Stewart Co. had been doing business with a great many different companies, and that they act as brokers for a large number of refiners. I had reason to think that they were acting for the Lawrence Gas Company as brokers. This was before we purchased this gasoline."

The president of the plaintiff, Lawrence Gas Company, testified that, when he made his arrangements with the Stewart Company to handle the product of the plaintiff, he told Mr. Stewart that the company was simply to sell the goods as a broker; that it, the plaintiff, would make its own collections.

This action is brought by the Lawrence Gas Company against the Hawkeye Oil Company, to recover the amount of the shipment. The defense plea is payment. The plea of payment relied on has its support in the fact only that, on the 6th day of January, 1914, the defendant, Hawkeye Oil Company, sent to the A. T. Stewart Company a check in the following form, which was received by the A. T. Stewart Company, cashed by it, and the proceeds retained:

THE HAWKEYE OIL COMPANY, No. 15251.

Waterloo, Iowa, Jan. 6, 1914.

Pay to the order of Lawrence Gas Co. $859.79, Eight Hundred Fifty-nine and 79-100 Dollars.

NOT OVER NINE HUNDRED $900.

To LEAVITT & JOHNSON NATIONAL BANK,
   WATERLOO, IOWA.

THE HAWKEYE OIL CO.,
By H. S. CAWARD, *Treas.*

The question here presented is whether or not this is a payment to the plaintiff company that binds the plaintiff

company and makes a good defense to the plaintiff company's claim to recover from the defendant company the amount due for said oil.

2. PRINCIPAL AND AGENT: powers of agent: commission merchant: brokers: powers contrasted.

We think it must be conceded from this record that A. T. Stewart & Company were simply merchant brokers. The business of a broker is to serve as a connecting link between the parties to the real transaction. Every person whose business it is to negotiate purchases and sales of property with the custody of which he has no concern, neither with the original possession nor the delivery, is a broker. He is strictly a middleman, or an intermediate negotiator between the parties. He is distinguished from a commission merchant or a factor in that he has no possession of the property affected by the negotiation. He has neither the possession, management, nor control of the property to be sold or bought. The general holding is that a broker is one who is not entitled to the possession of the property which is the subject of sale or purchase, and, unless specially authorized to do so, has no right, as broker, to receive payment for the property sold. The distinguishing feature which differentiates a broker from a factor or commission merchant is that he is not intrusted with the custody or possession of the property, and is not authorized to buy or sell it in his own name. See *Morgan v. Jaudon*, 40 How. Practice (N. Y.) 366, 378; *City of Little Rock v. Barton*, 33 Ark. 436, 437, 444; *Gast v. Buckley*, (Ky.) 64 S. W. 632; *Braun v. City of Chicago*, 110 Ill. 186, 194.

It is apparent from this record that, when the defendant, Hawkeye Oil Company, mailed to the A. T. Stewart Company the order hereinbefore set out, it knew that A. T. Stewart Company was a broker only; that it did not have the commodity ordered for delivery; that, to fill the order, it would be required to place it with some company that could

fill it and ship according to the order. When the defendant, Hawkeye Oil Company, received the oil, they knew that A. T. Stewart Company had placed their order with the Lawrence Gas Company; that the Lawrence Gas Company had filled and shipped the oil in pursuance of the order. The original invoice received by the defendant, Hawkeye Oil Company, told them that the Lawrence Gas Company had shipped the oil on terms "30 days net, 1 per cent ten days, F. O. B. Waterloo." They knew that the A. T. Stewart Company did not own the oil they had received, and had no right to receive payment for the same unless authorized by the Lawrence Gas Company to receive payment. They were charged with knowledge that the A. T. Stewart Company, as brokers, had no interest in the property received, and were only interested in so far as receiving a commission for bringing about and effectuating the sale was concerned. Therefore, there is no presumption that the A. T. Stewart Company had a right to receive payment for the oil so received by the defendant. There is no plea of estoppel, and no plea of ratification in this case. Defendant, in its answer, places itself squarely upon the proposition that the A. T. Stewart Company was the agent of the plaintiff, and was authorized to collect and receive the money on behalf of the plaintiff, and that a payment to the A. T. Stewart Company discharged its obligation to the plaintiff for the oil received.

Agency is a broader term than broker,—more comprehensive in its legal scope. A broker is an agent, but with limited authority. Ordinarily, they are not in any way connected with either the buyer or the seller of the property involved in any transaction. They are agents, it is true; but their powers are limited, and, when they have no charge or control over the property, but act only as go-betweens in effectuating a sale, they cannot be said to be

agents, in the larger sense, in effectuating the sale. They place the order with one who may or may not fill the order, —is not bound to fill the order. If the order is filled by the one with whom it is placed, a commission is paid to the broker for the order. If it is not filled, the broker gets no commission. Ordinarily, the broker's relationship to the transaction ceases when he places the order with his principal. In no sense does he sell the goods of his principal. He accepts orders and submits them to his principal, who accepts or rejects. Ordinarily, he has many principals, and he may place the order with any of them, and they approve or reject as their judgment suggests. If they reject, the matter is at an end. He may then place it with others of his principals, or with anyone having goods of the character ordered, with which to supply the demand. He earns his commission only in the event that the order is accepted and the shipment made. He enters into no contract with either the buyer or the seller for the sale or delivery of the property ordered. He is not entitled to receive payment for the goods delivered, unless especially authorized by the owner of the goods to receive payment. Therefore, it follows that one who pays to one of these brokers assumes the burden of establishing by a preponderance of the evidence that the broker was authorized by his principal to receive payment for the particular goods shipped. The general rule is that an agent who sells goods on sample, a traveling salesman who sells his principal's goods for future delivery, is not, by virtue of his employment alone, entitled to collect for the goods sold. There are some cases apparently holding to a different doctrine. These cases are all distinguishable because of the peculiar features involved in the particular case. We think the general rule is practically without exception. In *Simon v. Johnson*, 101 Ala. 368 (13 So. 491), that court said:

"The decided weight of authority—indeed, well-nigh all the adjudged cases—supports the proposition that a traveling salesman of merchandise, making sales by sample on a credit or for cash, to be paid on receipt of the goods or the invoice of them, has no implied authority to collect the money agreed to be paid from the purchaser" (citing many authorities).

Therein it distinguishes the Maine and Vermont cases relied upon by appellant in this case. See also *Lyles-Black Co. v. Alldredge,* 10 Ala. App. 632 (65 So. 696). The same doctrine is recognized in Minnesota (*Brown v. Lally,* 79 Minn. 38 [81 N. W. 538]).

In *Bailey v. Pardridge,* 134 Ill. 188 (27 N. E. 89), the court, while holding that the agent who sold the goods had a right to collect, and payment to him bound his principal, made the distinction as follows:

"Had the agent, Holmes, sold the defendants a bill of goods, and taken an order from them for a shipment of the goods from the house in Philadelphia, it is clear a payment to the agent for goods thus bought would not have been binding on the plaintiffs (*Clark v. Smith,* 88 Ill. 298). But this is a different case. Here, Holmes was not only clothed with the power of sale, but he had the possession of the goods, and was able to pass them over to the possession of the purchaser upon making sale and receiving payment."

The distinction seems to be that, where the power to sell and to deliver is invested in the same agent, upon delivery he may receive payment and bind his principal.

In *Law v. Stokes,* 32 N. J. L. 249 (90 Am. Dec. 655), it appears that plaintiff brought an action to recover the amount of a bill of goods sold by him to the defendant. The sale and delivery were admitted. The only question for determination was whether the defendant had paid for them. Plaintiff was an importer, and the defendant, a

keeper of a hotel.   The defendant purchased, at the store of
the plaintiff, from one J. B. Sheridan, a bill of goods.
Sheridan was employed by the plaintiff to sell the goods,
receiving a commission on each sale therefor.   The goods
were sold on credit, to be paid for in the future.   The goods
were shipped to the defendant, and a letter sent by the
plaintiff, in which he said, "Remit direct to me."   Enclosed
in the letter was a bill of the goods, billed in the name of
the plaintiff, which said that all remittances must be made
directly to the principal, saying, "the salesman not author-
ized to collect."   Thereafter, the defendant paid the bill to
Sheridan, and took his receipt.   Sheridan absconded.   Plain-
tiff sued to recover.   Held: Sheridan was a mere salesman
for commission.   As such, he had authority to sell goods
on credit, but not to discharge purchasers from debts in-
curred by them in purchasing goods through him from the
plaintiff, the court saying:

"An agent employed to make sales, and selling on cred-
it, is not authorized subsequently to collect the price in
the name of the principal, and payment to him will not dis-
charge the purchaser, unless he can show some authority in
the agent other than that necessarily implied in a mere
power to make sales.   Such authority may be shown by
proof, either that the agent was expressly authorized to
receive and discharge debts, or that he was held out by his
principal to the public, or to the defendant, as having such
authority."

See also Kane & Co. v. Barstow, 42 Kans. 465 (16 Am.
St. 490).   In this case, the rule is laid down that "author-
ity to an agent to sell goods does not include authority to
collect pay for goods thus sold."   Why multiply author-
ity?   This doctrine was recognized by this court in Draper
v. Rice, 56 Iowa 114; Englert v. White, 92 Iowa 97; and Sa-
win v. Union Building & Sav. Assn., 95 Iowa 477, 3d para-
graph.   The Sawin case was one in which the agent of the

defendant association was empowered to sell stock. He sold stock to Sawin, received payment for the stock, and absconded. The sale was made by procuring Sawin to sign an application for five shares of stock. Assuming that the agent had authority to sell stock for the company, he procured plaintiff to sign an application for so many shares of stock. He had power to sell the stock and to collect and receive for membership fees in the association. Sawin sought to recover the amount paid the agent. The defense was that the agent had no authority to collect the money. The court held otherwise, saying:

"As such agent, he had the right to do whatever was usual and proper to effect sales, including the receiving of money paid on account of them. 'A general agent is an agent who is empowered to transact all of the business of his principal of a particular kind or in a particular place.'"

Recovery was allowed on the theory that the seller of this stock was the general agent of the company, with power not only to sell, but to receive payment; and, for the purposes of the case, placed the agent in the same situation as a seller of goods would be in, who had possession of the goods and a right to deliver them. The court assumed that the agent had power to sell and pass title upon the sale. The sale was completed by the agent.

There is no evidence that any power or authority had been given the A. T. Stewart Company by appellant to make collections. It is not claimed by appellant that there was any direct authority to so do. The burden is on the defendant to show such authority, if they would bind the plaintiff company by payments made to the A. T. Stewart Company. There is no claim, and no testimony to support the claim if such were made, that the defendant was misled by the conduct of the plaintiff into believing that the A. T. Stewart Company had authority to collect for the plaintiff

company; and there is no plea and no evidence of estoppel; and there is no plea and no evidence that the plaintiff company ever ratified the payment in question. The defendant must stand or fall upon the proposition that the A. T. Stewart Company was authorized to receive this payment for the plaintiff. If they fail in this, they fail in their defense. Recognizing this fact, the defendant placed A. T. Stewart on the stand, and sought to show by him that the A. T. Stewart Company had collected for the plaintiff company on shipments such as are involved in this suit. A. T. Stewart testified, on direct examination:

"Q. During the time that you sold goods for the Lawrence Gas Company, did you make collections for them? A. Yes, sir. Q. Did you at any time endorse checks that were made payable to them? A. The company did. Q. Now, at any time before the transaction involved in this suit, did the Lawrence Gas Company make any objections to your making collections for them upon the goods that you had sold for them? A. No, sir."

He was asked this question:

"Do you have personal knowledge of the fact,—that is, of somebody representing the A. T. Stewart Company endorsing checks at other times before that for the Lawrence Gas Company? A. Yes, sir. Q. Do you have personal knowledge of the fact that the Lawrence Gas Company asked you or your company to make collections for it on goods that you had sold for it? A. Yes, sir. Q. And were these collections made? A. Yes, sir."

On cross-examination, he was asked to state to whom the sales were made on account of which the A. T. Stewart Company had made collections. He named three companies, and in each of these cases it would seem that the Stewart Company did not rely upon general authority to collect, but procured special authority in the particular case to make collection; or made the collection without author-

ity, and their action was repudiated by the Lawrence Gas Company. In some instances, drafts from purchasers passed through the hands of the A. T. Stewart Company to the Lawrence Gas Company. We find no evidence of express authority, and no conduct from which implied authority to collect can be found. In the absence of either express or implied authority, in the absence of proof of express authority, or facts and circumstances from which authority to collect can be implied, the proof does not satisfactorily meet the issue tendered by the defendant.

Every man is presumed to know the law, and the law is:

"A broker has, ordinarily, no authority to receive payment for property sold by him for his principal, and the purchaser who pays a broker does so at his own risk. Such payment does not discharge him from liability to the principal, unless the authority of the broker to receive payment be express or may reasonably be implied from the circumstances." *Robinson, Norton & Co. v. Corsicana Cotton Factory*, 124 Ky. 435 (14 Am. & Eng. Ann. Cases 802).

On the whole record, we find that the court was wrong in sustaining defendant's plea of payment, and the cause is, therefore,—*Reversed.*

LADD, EVANS, and SALINGER, JJ., concur.