[Civ. No. 5790. First Appellate District, Division Two.—May 13, 1927.]

ALBERTO BARRIOS, Appellant, v. E. Y. FOLEY, Respondent.

[1] BROKER'S COMMISSIONS—CONTRACT FOR SALE OF DRIED GRAPES—AGENCY—STATUTE OF FRAUDS—FINDING—EVIDENCE.—In an action by a merchandise broker to recover commissions for negotiating an alleged sale of dried grapes for a price exceeding $200, a finding that a certain individual had no authority from the alleged buyer to execute the confirmation and contract covering the sale of the grapes was justified, where the evidence showed that said individual had no authority in writing to execute the confirmation or contract.

---

1. Right to recover commission where statute requires written contract, notes, 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133. See, also, 1 Cal. Jur. 729; 12 Cal. Jur. 875; 4 R. C. L. 249, 300; 25 R. C. L. 606.

[2] ID.—BROKER AND PRINCIPAL—CONFIDENTIAL RELATION—PERFORM-
ANCE.—The relation between a broker and his principal is of a
confidential nature and imposes upon the broker the duty of acting
in the highest good faith toward his principal; and in order to
recover commissions on a sale made by him he must show that he
was duly authorized to perform the services for which he seeks
compensation, and that he performed the services according to
the terms of his contract of employment.

[3] ID.—WHEN RIGHT TO COMMISSIONS ACCRUES.—The broker's right
to commissions does not accrue until he has brought the minds of
the buyer and seller to an agreement for a sale, and the price
and terms on which it is to be made.

[4] ID.—PERFORMANCE BY BROKER—WHAT CONSTITUTES.—The broker
must be the procuring source of the transaction, and to be ad-
judged such he must prove that he found a purchaser ready, will-
ing, and able to buy the property on the terms fixed and procure
from that person a valid contract binding him to purchase the
property on those terms, or that he brought the vendor and pur-
chaser together so that the vendor might have secured such
contract if he desired.

[5] ID. — PERFORMANCE BY BUYER — FINDING — EVIDENCE.—In such
action, the finding that the alleged buyer was not at any time
able, ready, or willing to buy the grapes in question was justified,
where the testimony showed that the balance sheet of the bank
with which the buyer did business showed but a small deposit
during the month that the sale was alleged to have been made,
and that such buyer had no property, and that no arrangements
had been made with any bank or other institution for credit rela-
tive to the purchase price of the grapes.

[6] ID. — INSPECTION BY BUYER — CONDITIONAL CONTRACT. — In such
action, the clause to the effect that the buyers' inspection was to
be final, inserted in the alleged contract of sale at the special
instance and request of the broker, rendered the contract con-
ditional; and under such a contract no grapes would be considered
as finally sold until the alleged buyer had inspected and approved
the same.

[7] ID.—APPROVAL OF GOODS—EXECUTORY CONTRACTS—COMMISSIONS.—
A broker is not entitled to recover a commission merely for nego-

2.  See 4 Cal. Jur. 567; 4 R. C. L. 269.
3.  See 4 Cal. Jur. 582.
4.  When broker's commissions are earned, notes, 28 Am. St. Rep.
546; 139 Am. St. Rep. 225.  See, also, 4 Cal. Jur. 582, 583; 4 R. C. L.
306, 307.
5.  See 4 Cal. Jur. 592.
7.  See 4 Cal. Jur. 594.

tiating a sale of goods where the memorandum of sale upon which the broker relies for recovery especially provides that the goods must meet the buyers' approval, as contracts of this sort are executory in character, making the commissions depend upon their execution.

***

(1) 9 **C. J.**, p. 516, n. 73.   (2) 9 **C. J.**, p. 536, n. 25, p. 644, n. 92, p. 645, n. 96.   (3) 9 **C. J.**, p. 594, n. 27.   (4) 9 **C. J.**, p. 595, n. 29, p. 611, n. 8.   (5) 9 **C. J.**, p. 655, n. 43.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goldman & Altman for Appellant.

Harris & Hayhurst and Rue C. Gibson for Respondent.

BARTLETT, J., *pro tem.*—Plaintiff seeks a judgment against defendant for $3,450 for services as a merchandise broker alleged to have been rendered in negotiating a sale of 600,000 pounds of dried grapes for the sum of $138,000 at an agreed compensation of 2½ per cent of the purchase price. Defendant denied the indebtedness and set up as a special defense that the buyer, one T. Miwa Company, was at the time of the alleged sale financially irresponsible and without means, property, or credit to pay for the goods agreed to be sold.

The court found that about November 15, 1920, defendant employed plaintiff as a broker to sell ten carloads of dried black Zinfandel grapes, containing 600,000 pounds at 23 cents per pound and agreed to pay plaintiff as commissions 2½ per cent of the selling price when plaintiff secured a valid and enforceable contract or a purchaser ready, able, and willing to buy the grapes on defendant's terms; that on November 17, 1920, plaintiff notified defendant he had sold the grapes and mailed defendant a paper termed a confirmation executed by one R. H. Newman, as agent for the T. Miwa Company. That defendant executed a written contract and sent it to plaintiff, who presented it to R. H. Newman, who signed the name of T. Miwa Company thereto, by R. H. Newman. That R. H. Newman had no authority from T. Miwa Company to sign the confirmation or contract, and

that no contract binding on T. Miwa Company was ever procured by plaintiff. That the T. Miwa Company was not at any time mentioned in the complaint ready, able, or willing to buy the grapes and that defendant at all times was ready, able, and willing to furnish the grapes in accordance with his contract. Judgment was awarded defendant and this appeal is taken from the judgment on a bill of exceptions.

Plaintiff contends for a reversal of the judgment on three grounds: First, that the finding that R. H. Newman had no authority from T. Miwa Company to execute the confirmation and contract is not supported by the evidence; second, that the finding that T. Miwa Company was not able, willing, and ready to buy the grapes is not supported by the evidence, and, third, that the finding that plaintiff was to receive his brokerage when he had received a valid and enforceable contract is not strictly in accordance with the contract of employment.

The dealings between the parties began with the sending of a postal card some time prior to November 15, 1920, by plaintiff to defendant seeking a purchase of ten cars of dried grapes. Plaintiff was a resident of San Francisco, California, and defendant resided at Fresno, California. Several telegrams and letters passed between the parties, which finally resulted on November 20, 1920, in the execution of the contract sued upon, which, like the confirmation, was signed T. Miwa Company, by R. H. Newman. At the request of plaintiff, after defendant had signed and mailed the contract, there was inserted in the same with the consent of defendant these words: "1920 crop stemmed and cleaned. Buyers inspection final." The contract was signed "T. Miwa Company, by R. H. Newman."

[1] Defendant objected to the introduction of the confirmation and contract in evidence unless a showing was made that R. H. Newman had some written authority authorizing him to make a binding contract on T. Miwa Company and the court allowed the introduction of the instruments conditionally on its being shown that Newman had the authority to act for the T. Miwa Company.

That Newman had no authority in writing to execute the confirmation or contract is clearly shown by the evidence. He himself says: "I was employed by Mr. Wolfsohn to work

for T. Miwa Company. He gave me authority to buy and sell merchandise for the company. My authority was verbal.'' The Wolfsohn referred to was a partner in the T. Miwa Company. He testified that Newman was not an employee of the firm, that he worked on a commission basis for it, was to receive certain profits from the sale of these goods, had no written agreement in that regard, that his arrangement was entirely verbal, that at the time the contract was signed he was busily engaged in other duties, and that on Newman saying to him, ''I bought ten cars of grapes, Mr. Wolfsohn,'' he, Wolfsohn, said, ''Very well, I give you full power to sign T. Miwa Company's name by yourself, to this transaction.''

Under section 1624 of the Civil Code a contract such as the one in question, being for a sale of goods at a price exceeding $200, is not valid unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent, and under the provisions of section 2309 of the Civil Code the authority to sign such instrument as agent can only be given by an instrument in writing.

[2]  The relation between a broker and his principal is of a confidential nature and imposes upon the broker the duty of acting in the highest good faith toward his principal. In order to recover commissions on a sale made by him he must show that he was duly authorized to perform the services for which he seeks compensation, and that he performed the services according to the terms of his contract of employment.  [3]  His right to commissions does not accrue until he has brought the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made.  [4]  He must be the procuring source of the transaction, and to be adjudged such he must prove that he found a purchaser ready, willing, and able to buy the property on the terms fixed and procure from that person a valid contract binding him to purchase the property on those terms, or that he brought the vendor and purchaser together so that the vendor might have secured such contract if he desired. (*Gunn* v. *Bank of California,* 99 Cal. 349 [33 Pac. 1105]; *Sills* v. *Ceschi,* 167 Cal. 698 [140 Pac. 949]; *Jauman* v. *McCusick,* 166 Cal. 517 [137 Pac. 254]; *Carrington* v. *Smithers,* 26 Cal. App. 460 [147 Pac. 225];

*Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am. St. Rep. 87, 39 Pac. 200]; *Douglas* v. *Spangenberg,* 23 Cal. App. 294 [137 Pac. 1103]; *Cone* v. *Keil,* 18 Cal. App. 675 [124 Pac. 548].)

[5] The finding that the T. Miwa Company was not at any time able, ready, or willing to buy the grapes in question finds ample support in the evidence offered. Both Newman and Wolfsohn testified that the partnership did business with the American National Bank of San Francisco. The bank balance sheet of this bank shows that for the month of November, 1920, the most T. Miwa Company had on deposit during that month was $267.25. Wolfsohn testified that T. Miwa Company had no property and that he had made no arrangements with any bank or other institution for credit relative to the purchase price of the grapes. While he stated that he had letters of credit from clients in the Orient which he could have used, he could not give any of the particulars concerning the letters of credit.

[6] The contention of respondent that the contract with T. Miwa Company is conditional because of its containing the clause, "Buyers inspection final," must be sustained. This clause was inserted in the contract at the special instance and request of the plaintiff made to defendant on November 20, 1920.

No contract was completed concerning the sale of these grapes until November 20, 1920, and under the contract as completed no grapes would be considered as finally sold until T. Miwa Company had inspected and approved the same. That samples of grapes were thereafter offered by defendant to the T. Miwa Company and not accepted by it is clearly shown by the evidence.

[7] That a broker is not entitled to recover a commission merely for negotiating a sale of goods where the memorandum of sale upon which the broker relies for recovery especially provides that the goods must meet the buyers' approval, and that contracts of this sort are executory in character, making the commissions depend upon their execution, is clearly decided in the late decisions of *Ball* v. *California Conserving Co.,* 189 Cal. 326 [207 Pac. 1011]; *McAdoo* v. *Moore,* 70 Cal. App. 408 [233 Pac. 391].

The judgment appealed from is affirmed.

Koford, P. J., and Sturtevant, J., concurred.