## Appellate Department, Superior Court, Fresno

[Civ. A. No. 18.   Feb. 24, 1954.]

LOREN H. McFARLAND, Respondent, v. LeROY F. HEADY, Appellant.

Frank Marvin and Harold V. Thompson for Appellant.

Stutsman, Hackett & Nagel for Respondent.

CONLEY, J.—The defendant appeals from a judgment for $2,500 awarded the plaintiff real estate broker for alleged services rendered by him in procuring a contract for the exchange of Fresno County property consisting of a motel.

The exchange was never, in fact, consummated because a condition understood, and stipulated to, by all of the interested parties was never fulfilled. ▮ The exchange agreement failed solely because a third party, who owned the land upon which the motel was located, refused to execute a new lease to the proposed purchaser upon satisfactory terms, this having been made a condition for the performance of the agreement of exchange. The fundamental question of law raised by appellant which is determinative of this case is, therefore, this: Is a broker entitled to a commission for the sale or exchange of real property if he procures a conditional purchaser ready, able and willing to buy only in the event of the happening of a condition which never occurs?

As the answer to this question is clearly "no" under California law, and the case must be decided accordingly, it will be unnecessary to consider other points raised on the appeal.

On May 16, 1952, the defendant, LeRoy F. Heady, and the McFarland Agency, by Frank C. Rich, executed a California Real Estate Association Standard Form Authorization to Sell; LeRoy F. Heady constituted the McFarland Agency as his agent "exclusively and irrevocably" for a period of 15 days "commencing May 16, 1952 and ending May 31, 1952" to sell the "Bragg Motel on Highway 99 south of City of Fresno, immediately south of the overpass, consisting of 18 rental units, together with all furnishings and equipment and supplies pertaining to the motel." It was agreed by the parties that disposal of the Bragg Motel would depend upon the negotiation of a lease with the owner of the land upon which the motel stood:

"It is understood that all improvements are chattels on a lease of the land upon which same are constructed, and payments on said lease is $70.00 per month. Upon sale of motel a new lease will be drawn with the owner of the land for 20 years, renewable, and at the same monthly rental of $70.00 per month. Lease carries a verbal option to purchase upon owners death, who is about 84 years old."

The agent is granted "the exclusive and irrevocable right to sell the same within said time for SIXTY-FIVE THOUSAND AND NO/100 ($65,000.00) and to accept a deposit thereon." The contract continues by stating that the seller will accept $20,000 in cash and give "terms in reason on balance." Seller agrees to pay the broker 5 per cent of the sale price "herein set forth whether said property be sold by said agent or by me or by another agent or through some other source" within the time specified. And the agreement further provides that should a sale be made within 60 days after the termination of the authorization, to parties with whom the agent negotiated during the term, and said agent should notify the seller personally or by mail, in writing, of such negotiation within five days after the termination, the commission would be payable.

The plaintiff broker, through his employee, Frank C. Rich, succeeded in inducing two Santa Cruz people (F. J. Schaefer and his wife, Muriel) to agree conditionally to an exchange of property owned by them for the Bragg Motel. The Schaefers signed two instruments on June 3d, 1952; one is called "Provisional Acceptance of F. J. Schaefer and Wife Offer

to Exchange Santa Cruz Property for Bragg Motel at Fresno''; the second is denominated an exchange agreement. These two documents, constituting a conditional acceptance by the Schaefers of the Heady offer, must be read together, as they were executed at the same time by the Schaefers, deal with the same factors and complement each other; the two exhibits constituting the conditional acceptance were prepared by, or under the direct supervision of, Mr. Rich, the employee of plaintiff herein. The exchange agreement contains the following provision:

"It is understood that all improvements" (the Bragg Motel) ''are chattels on a land lease, and payments on said lease are $70.00 per month, said lease to be negotiated with land owner for 20 years from date and renewable at the same present rate.''

It will be noted that this clause is identical in meaning with the language already quoted from the original broker's contract.

When these writings are reasonably construed in the light of the entire record, the conclusion is inescapable that the Schaefers and Heady, as well as McFarland and his employee Rich, fully understood at all times that the procurement of a new lease from the land owner was an essential condition to the effectuation of the exchange. This fact is further established by the two sets of escrow instructions prepared by the respective parties. (Defendant's Exhibits ''A'' and ''B''.) Under date of June 23d, 1952, Mr. Rich, for the McFarland Agency, wrote the Schaefers an account of his attempt to secure a lease from Mr. Frolich, the land owner; the land owner, he said, was willing to give a 20 year lease at a rental of $1,000 per year, payable 6 months in advance, and he would also consent to insert a ''first refusal'' clause in the lease; the letter concludes with the admonition ''we urge you to use your best judgment in the matter and let us hear from you.'' (Defendant's Exhibit ''D''.) The Schaefers refused to execute the proposed new lease at this substantial advance in rental. (Defendant's Exhibit ''C''.) The record establishes that the exchange of the real property involved was not effected because the condition contained in the Exchange Agreement was never fulfilled. There is no contention that Mr. Heady or the Schaefers acted in bad faith or fraudulently or capriciously, or that either of them changed his mind or repudiated the conditional contract reached between them.

The situation is simply one in which the principals agreed to effect an exchange of properties, only if a lease, with certain terms, should be granted by the owner of the land on which the motel was located; the procurement of the lease proved impossible and, as the condition was not complied with, no effective contract for the exchange of the property ever came into being. The plaintiff undoubtedly devoted substantial time and money in his attempt to complete the transaction, and he did all that he could to close the deal successfully. But, as the contract for the exchange was conditional and the condition did not occur, the broker is not entitled to any pay.

In *Colton* v. *O'Brien,* 217 Cal. 551 [20 P.2d 43], the plaintiff had recovered judgment for a broker's commission based on a conditional contract for the exchange of real property; the defendant had employed the plaintiff to exchange her equity in certain real estate in Portland, Oregon, valued at $125,000, for property of a like value. The complaint alleged that the plaintiff secured a written offer from one, Gumplo, to exchange Los Angeles property owned by him for the Portland land, upon condition that a loan of $35,000 could be secured by him on the Oregon property. The loan could not be procured under the terms required by Gumplo, and the Supreme Court, holding that no commission had been earned, reversed the judgment. In the opinion it is said:

"The procurement of the loan was a condition precedent to the exchange. As the exchange was never made appellant's acceptance of the conditional offer was never fulfilled and plaintiff was not, therefore, entitled to a commission.

"A broker must bring about a completed transaction in accordance with his undertaking. He is never entitled to a commission for unsuccessful efforts. His commission comes only with success. Success is the very object of the contract. Unsuccessful efforts are of no benefit to the owner and afford no ground of action."

In the companion case of *Colton* v. *Gumplo,* 217 Cal. 554 [20 P.2d 44], the Supreme Court makes the same holding, saying in the opinion:

"The procurement of the character of loan required was a condition precedent to the exchange. A broker is never entitled to a commission for unsuccessful efforts. Here plaintiff is attempting by these actions to recover $7,000 for services he never performed and which were of no benefit whatsoever to the parties."

A similar conclusion is reached by the Supreme Court with respect to a condition subsequent in the case of *Ball* v. *California Conserving Co.*, 189 Cal. 326 [207 P. 1011]. There the plaintiff sued for broker's commissions for negotiating sales of tomato paste, evidenced by a contract containing the following provision: "Subject this year's delivery, meeting buyer's approval." The buyer did not approve the paste upon inspection, and the contract was cancelled; whereupon the broker sued for his commission and recovered judgment in the court below. In reversing the judgment, the Supreme Court says:

"Appellant herein contends that as to the Russo & Co. sale the goods offered by the seller did not meet with the buyer's approval, and hence that the condition in the contract of sale in that respect not having been fulfilled, and the contract for that reason having been canceled, the plaintiff was not entitled to recover any commissions upon such sale.

"We see no answer to this contention.

"The memorandum of sale upon which the plaintiff relies for a recovery contains the express provision that the goods must meet the buyer's approval. This provision renders it an executory contract of sale upon a condition subsequent, without the fulfillment of which there could have been no completed sale under said contract. The right of the broker to recover commissions must be held to have depended upon a completed sale; and this not having been consummated it follows that the right of the plaintiff to recover his commissions under the contract with Russo & Co. must fail."

Again in *McAdoo* v. *Moore*, 70 Cal.App. 408 [233 P. 391], a judgment in favor of the assignee of food brokers for their commission was reversed on the ground that the contract negotiated by the brokers provided as a special condition that the product sold was "subject to approval of sample now in transit." The produce was not accepted because the sample was not satisfactory, but the trial court refused to admit such evidence, taking the position that the commission was earned by the negotiation of the written contract of sale, regardless of whether or not the condition set forth in the agreement was fulfilled. In dealing with the situation thus presented, the Supreme Court says:

"While it is true, generally speaking, that a broker earns his commission when he produces a purchaser ready, able, and willing to purchase according to the terms upon which he

was employed to sell, a different legal situation arises where a broker is employed to negotiate a sale, as in the instant case, and negotiates a contract of conditional sale. He then is bound to show that the condition has occurred which converts the conditional sale into an actual sale—a binding contract between the parties. The contract before us is in effect, as characterized by appellant, nothing more than an offer. This is not a case where samples were presented to the purchaser which were acceptable to him, and the goods warranted to be equal to sample. In such a case, the purchaser would have no choice but to accept the goods if they conformed to the sample. But here we have a case where the goods were sold *subject to approval of a sample* to arrive weeks later. When the sample arrived it was not satisfactory and was not approved. The purchaser was not bound to take the goods and there was no valid, enforceable contract of sale and purchase between the parties.'' (Italics are the court's.)

In *Leipsic* v. *Taggart,* 101 Cal.App. 726 [282 P. 400], the plaintiff broker brought suit against the defendant for a commission, contending that he had produced a buyer ready, able and willing to purchase a mortgage which defendant had offered to sell. The letter from the defendant to the plaintiff, authorizing the sale of the mortgage, contained the following provision:

''At the present time, I have borrowed at my bank against this mortgage, and the sale to you is predicated on their allowing me to take the loan up immediately.''

The evidence showed that the bank had refused to allow the defendant to take up the loan, and the judgment of the trial court in favor of the defendant was affirmed.

See, also, *Barrios* v. *Foley,* 83 Cal.App. 105, 110 [256 P. 573].

The judgment in favor of the plaintiff must, therefore, be reversed; and it would constitute a needless expense to both sides to require the parties to relitigate the action which, under the law and the fact, could have but one result—a judgment in favor of the defendant.

It is, therefore, ordered that the judgment of the trial court be, and it hereby is, reversed, with instructions to the municipal court, upon the going down of the remittitur, to enter a judgment that plaintiff take nothing by his action, and that defendant have judgment for his costs.

Shepard, P. J., and Kellas, J., concurred.