[S. F. No. 9994.   In Bank.—July 13, 1922.]

F. M. BALL et al., as Trustees, etc., Respondents, v. CALI-
FORNIA CONSERVING COMPANY (a Corporation),
Appellant.

[1] BROKER'S COMMISSIONS—NEGOTIATION OF SALE OF GOODS—BUYER'S
APPROVAL.—A broker is not entitled to recover a commission for
negotiating a sale of goods, where the memorandum of sale upon
which the broker relies for recovery expressly provides that the
goods must meet the buyer's approval and such memorandum is
canceled by agreement of buyer and seller for such reason.

[2] ID.—SALE OF VEGETABLE PRODUCTS—PRELIMINARY MEMORANDUM—
REFERENCE TO REGULAR FORM OF CONTRACT—EFFECT OF.—Where
the memorandum of sale of certain vegetable products, upon which
the broker negotiating the sale relied to recover the commission,
provided that the terms of sale was the "regular California vege-
table contract," the broker, in the absence of a showing to the
contrary, must be held to have been aware of the provision con-
tained in such form of contract that in case of damage to crop,
or for other cause, the seller was unable to make full delivery,
the buyer agreed to accept *pro rata* delivery upon all goods packed
short, and to have contracted that the amount of such commission
should depend upon the quantity of goods actually delivered.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. E. P. Shortall,
Judge. Reversed.

The facts are stated in the opinion of the court.

Goldman & Altman for Appellant.

E. J. Torregano and Goldman, Nye & Surr for Re-
spondents.

RICHARDS, J., *pro tem.*—Defendant appeals from a
judgment recovered against it in an action instituted by
F. M. Ball & Co., a corporation, for commissions for ne-
gotiating three sales of what is commercially known as
"tomato paste." The complaint contained two counts cov-
ering each sale, one predicated upon the agreed compensa-
tion and the other upon the reasonable value of the

services. The answer, by its failure to deny the same, admitted the allegations of the complaint touching the incorporation of the respective parties to the action, but denied the remaining allegations of each count. The findings were that the allegations of the complaint were true, and, based thereon and upon the conclusion of law, the trial court rendered judgment for plaintiff in the amount prayed for, with interest from the date of sales declared upon in the several counts of the complaint.

Three separate transactions were involved: The first was a sale of tomato paste to A. Russo & Co. of Chicago, upon which the court found and adjudged that plaintiff was entitled as a commission to $687.50, with interest thereon from October, 1917, the date of the alleged sale, at the rate of 7% per annum. The remaining two sales were sales of paste to the Natwill Company of New York, upon which the court found and adjudged that plaintiff was entitled to recover as commissions the sum of $452, with like interest respectively on $212 thereof from February 2, 1918, and on $240 thereof from March 22, 1918, the dates, respectively, of such sales. At the time the several orders were secured by plaintiff a sales memorandum was prepared in writing in each case, stating the amount and price of the goods sold. Each was accepted by the defendant. These documents were identical in form except as to the name of the purchaser, the date of the memorandum, the amount and time of shipment of goods. The price of the goods was the same in each case. These memoranda were in abbreviated form as to some of their provisions, among which was a clause reading, "Terms: reg. Cal. veg. contract." These memoranda each contained the following provision: "2½% brokerage to Ball-Lockhart." These memoranda also contained the following clause: "Subject this year's delivery meeting buyer's approval." Subsequent to the making and execution of these memoranda in abbreviated form a more amplified contract of sale was entered into during the early part of the year 1918 between the defendant as seller, and each of the purchasers, which, though executed by the defendant and the latter, was not presented to the plaintiff for either its approval or signature. The record seems to indicate that these later docu-

ments followed generally the form of the regular California vegetable contract used by sellers and purchasers of vegetable products. In each of these amplified contracts there was this provision: "Quality of tomato paste to be superior to last year's crop sold to us by Pacific Vinegar and Pickle Works." There was also, under the subhead of "terms and conditions," the further provision reading as follows: "In case of damage to crop, or for any cause or causes whatsoever, the seller is unable to make full delivery of any of the varieties of goods named, the buyer agrees to accept *pro rata* delivery upon all goods packed short." These later contracts contained no reference to the broker or its commission, and, as we have seen, were not presented to it, or signed by it. (The Pacific Vinegar & Pickle Works above referred to was the predecessor of the defendant.)

Directing our attention first to the sale to Russo & Co., it appears that on March 29, 1918, after the execution of the amplified contract with it, Russo & Co. wrote the defendant as follows: "Under separate mail we are sending you a sample of six cans of California tomato paste. The tomato paste received from you last year does not come up to this high grade standard. We wish to state that we must have quality same as sample which we have sent you." To this letter the defendant, on April 3, 1918, replied: "The article which we supplied to the trade last year gave universal satisfaction, and it will be made in the same way and of the same standard and grade this year. We take it from your letter that this being the case you will want to cancel your contract with us. If our understanding is correct we then ask you to definitely advise us one way or the other by return mail please." Russo & Co., on the 8th of the same month, answered, "If acceptable to you we cancel our contract #94 covering 1800 cases 200/6 oz tins of tomato paste. You will, therefore, acknowledge receipt of our cancellation by return mail." Russo & Co., not content to transmit a reply to this letter through the usual course of mail, on April 16, 1918, wired defendant, "Please wire at our expense cancellation of our contract," to which request defendant replied by wire, "We accept your cancellation of tomato paste contract."

[1]   Appellant herein contends that as to the Russo & Co. sale the goods offered by the seller did not meet with the buyer's approval, and hence that the condition in the contract of sale in that respect not having been fulfilled, and the contract for that reason having been canceled, the plaintiff was not entitled to recover any commissions upon such sale.

We see no answer to this contention.

The memorandum of sale upon which the plaintiff relies for a recovery contains the express provision that the goods must meet the buyer's approval. This provision renders it an executory contract of sale upon a condition subsequent, without the fulfillment of which there could have been no completed sale under said contract. The right of the broker to recover commissions must be held to have depended upon a completed sale; and this not having been consummated it follows that the right of the plaintiff to recover his commissions under the contract with Russo & Co. must fail.

[2]   As to the right of the plaintiff to recover its commissions upon the sales of the Natwill Company another question is presented.

The memorandum of sale in each of said contracts, as we have seen, contains the abbreviated clause reading as follows: "Terms: reg. Cal. veg. contract." This abbreviated clause is conceded, when amplified, to mean: "Terms: regular California vegetable contract," and this clause thus amplified, when contained in the preliminary agreement between the seller and the buyer, upon which the plaintiff relies for its right to its commissions, must be interpreted as meaning that the parties to said preliminary agreement were contracting with reference to and under the provision of the usual amplified contract for vegetable products in general use among the sellers and buyers of such products at the time; and hence it will be assumed that when the buyer and seller executed the enlarged contract a few weeks later such enlarged contract was the regular California vegetable contract which was in the contemplation of all of the parties to the preliminary memorandum of agreement upon which the plaintiff herein relies for the recovery of its commissions. If this assumption is correct

it would necessarily follow that the provisions of the later and enlarged contract are to be read into the preliminary agreement between the parties; and this being so, it must be held, in the absence of a showing to the contrary, that the plaintiff at the time of the execution of the said contract was aware of the conditions embraced in the regular California vegetable contract, and, hence, was aware of the fact that such enlarged contract contained the provision that "In case of damage to crop, or for any cause or causes whatsoever, the seller is unable to make full delivery of any of the varieties of goods named, the buyer agrees to accept *pro rata* delivery upon all goods packed short." Being thus aware of this condition in the enlarged contract the plaintiff must be held to have itself contracted with reference to it, and hence to have agreed that the amount of its commissions should depend upon the amount of the deliveries of the seller's product, which, as shown by the undisputed evidence herein, was but 22.2 of the amount of goods provided for in the preliminary contract between the parties.

The foregoing conditions as to the amount of goods to be delivered and accepted, upon which the plaintiff's percentage of commissions was to be computed, appearing upon the face of these contracts, it was necessary for the plaintiff to show that there had been a full delivery of all of the goods provided for in the memorandum of agreement upon which it relies before it would be entitled to the full commissions which it claims. Not having shown this but, on the contrary, the undisputed evidence being that the seller's pack and delivery was but 22.2 per cent of the anticipated amount provided for in the preliminary memorandum, it follows that the plaintiff's commissions must be computed upon the actual amount of goods delivered under said contracts.

It follows from the foregoing that as to the Russo & Co. contract the plaintiff was not entitled to recover any commissions; and that as to the two contracts with the Natwill Company, the amount of commissions recoverable by the plaintiff must be computed upon the basis of the actual deliveries made under said contracts; and that the trial court was in error in awarding the plaintiff judgment for com-

missions in an amount in excess of that indicated by the views above set forth.

Judgment reversed.

Shaw, C. J., Waste, J., Sloane, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Lennon, J., who dissented.

Myers, J., *pro tem.*, was acting.