[Civ. No. 16953. Second Dist., Div. One. Mar. 30, 1950.]

FORTIER TRANSPORTATION COMPANY (a Corporation), Appellant, v. UNION PACKING COMPANY (a Corporation) et al., Respondents.

Spray, Davis & Gould for Appellant.

Donn B. Downen, Jr., Frank W. Woodhead, Richard T. Drukker and Otto M. Kaus for Respondents.

DRAPEAU, J.—Four motor vehicles were involved in an accident on the Ridge Route, the great trunk highway, U.S. No. 99, leading from Southern California to the San Joaquin Valley. The accident happened as daylight was fading into night; outlines of the vehicles could be seen; they all had their lights on.

The place of the accident was a few miles south of Gorman, and 185 feet north of a level bridge. From the bridge, it was slightly upgrade in both directions. The roadway was paved and divided into three 10-foot lanes.

Plaintiff Fortier Transportation Company's vehicle was what is commonly called a "tanker." It consisted of a truck tractor, semitrailer and trailer. The semitrailer and trailer were tanks supported by running gear, for transportation of liquid commodities. The tanker was loaded with propane, and weighed approximately 78,000 pounds. It was going south toward Los Angeles.

Defendant Union Packing Company's vehicle was a cattle truck and trailer. This vehicle was carrying furniture in the truck and two horses in the trailer; it weighed much less than the tanker, and was going north toward Bakersfield.

As these two combination vehicles approached the bridge, each had to deal with other vehicles on the road. The Union truck swung into the center lane to pass a car going in the same direction, north. An automobile going south, in the same direction as the Fortier tanker, passed the tanker, pulled back into the right-hand lane, and abruptly slowed down. This precipitated a swift succession of events.

The driver of the tanker applied his brakes and swerved out into the middle lane. Then he saw coming toward him the four headlights of the Union truck and of the car which that truck was passing. So he swerved back toward his own right-hand lane. But he didn't quite make it.

The tanker and the truck collided, causing extensive damage to both vehicles. Also the driver of the Union truck and a passenger who was riding with him suffered severe but not permanent personal injuries.

Fortier Transportation Company filed complaint against Union Transportation Company and Union's driver. Union, its driver, and the passenger cross-complained against Fortier. Verdict was rendered by a jury in favor of Fortier and against Union and Union's driver, both on the complaint and on the cross-complaint. Damages were fixed by the jury in the sum

of $9,750.84, the stipulated amount of Fortier's property damage.

Motion for judgment notwithstanding the verdict was granted by the court. Judgment followed, denying damages to Fortier Transportation Company, owner of the tanker, and denying damages to Union Transportation Company and its driver as against Fortier. Then a new trial was ordered as to Union and Union's driver on the cross-complaint. Trial of the issues was thus severed. Fortier is partly out of the case by a judgment against it on its complaint, but remains as defendant on the cross-complaint.

■ At the close of the case, and after a luncheon recess, the judge made the following statement appearing in the reporter's transcript:

"The Court: During the noon recess, and in chambers, outside the presence of the reporter, the attorney for the defendants and cross-complainants moved for a directed verdict for the defendant and cross-complainants and against the plaintiff and cross-defendant, and the motion was denied."

The clerk's transcript is silent as to any motion for a directed verdict, or any order denying such motion. Sections 166, 657, and 663 of the Code of Civil Procedure do not authorize motions for directed verdicts to be heard in judges' chambers without a record being made thereof. Therefore, the judgment notwithstanding the verdict is without support. (Code Civ. Proc., § 629; *Doyle* v. *McPherson*, 36 Cal.App.2d 81 [97 P.2d 249].) However, as a new trial on all the issues must be had, this court will continue with its opinion and pass upon all of the questions of law involved in the case. (Code Civ. Proc., § 53.)

Plaintiff appeals from the judgment and from the orders granting motions for judgment notwithstanding the verdict and for new trial. By stipulation the appeals were consolidated, and have been briefed and considered together.

■ It is hard to understand why judgment notwithstanding the verdict was granted, unless the matter of speed of the combination vehicles was not argued to, or considered by the trial judge. Mr. Monroe Manning, the driver of the automobile going north, which Union's truck was passing at the time of the accident, testified by deposition. He says several times in his deposition that *at the time of the passing* of his car by Union's truck he was going 45 to 50 miles per hour. Mr. Manning had good reason to vividly remember details pre-

ceding the accident. Grim-visaged death pounded up behind and alongside him, clutched crepitantly for his life, and then, relenting, let him go. For his car was struck by the truck, and when he got it stopped he saw that its left rear fender had been sheared off.

Under well-settled rules of law, if there is any substantial evidence in the record which proves negligence of Union's driver, the judgment notwithstanding the verdict must be set aside. Therefore, it is obvious that, giving to Mr. Manning's testimony the verity and effect which the law requires, Union's truck and trailer had to be going at a rate of speed in excess of that testified to by this witness—more than 45 miles an hour.

At the time of the accident, the applicable provisions of section 515 of the California Vehicle Code were as follows:

(a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour:

(1) Any motor truck and trailer.

(2) Any motor truck alone or with semitrailer having a gross weight, of vehicle and load or of such vehicles and load of twenty-five thousand pounds or more.

The section was amended in 1947, by adding the words "truck tractor" in subsection (a-2), and the section now reads:

(a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour:

(1) Any motor truck and trailer.

(2) Any motor truck alone or truck tractor with semitrailer having a gross weight, of vehicle and load or of such vehicles and load of 25,000 pounds or more.

The driving of a loaded tractor truck and semitrailer, weighing 25,000 pounds or more at a speed greater than 40 miles per hour is negligence *per se*. (*Wood* v. *Moore,* 64 Cal.App.2d 144 [148 P.2d 91].)

Union's combination vehicle was a truck and trailer; substantial evidence indicates that it was exceeding the speed limit prescribed in section 515 of the Vehicle Code; it may have been going too fast anyway; it was the function of the jury to find negligence and proximate cause; and its verdict under the facts in this case may not be set aside by judgment notwithstanding the verdict.

To escape the conclusion of negligence in driving a truck and trailer at a speed in excess of 40 miles an hour respond-

ents contend: (1) That Mr. Manning's testimony is "demonstrably impossible"; (2) that section 511 of the Vehicle Code permits a "basic prima facie speed limit" of 55 miles an hour; and (3) that section 515 of the same code was unconstitutional before the 1947 amendment because it did not include truck tractors and motor trucks.

The first contention is untenable. Mr. Manning's testimony is not inherently improbable.

The second contention is answered by section 511, which provides: "The speed of any vehicle upon a highway not in excess of the limits specified in this section *or established as authorized in this code* is lawful unless clearly proved to be in violation of the basic rule declared in Section 510 hereof." (Emphasis added.)

Section 515(a) establishes a maximum speed limit for trucks and trailers, and each subsection means what it says: Subsection (1) prohibits any speed of a truck and trailer in excess of 40 miles an hour. This subsection applies also to a truck tractor with semitrailer and additional trailer behind it (*Wood* v. *Moore, supra*; *Beck* v. *Azcarate*, 50 Cal.App.2d 264 [122 P.2d 933]). Subsection (2) provides the same speed limit for a truck without a trailer or a tractor with a semitrailer of a gross weight of more than 25,000 pounds. If the gross weight of either type of vehicle is less than 25,000 pounds, then the *prima facie* speed limits are applicable. (Veh. Code, § 511.)

In this connection two important things are always to be remembered:

First, that in addition to the maximum speed limits stated in the code *prima facie* speed limits of less than the maximum apply to all vehicles; and

Second, that, irrespective of speed limits specified in miles per hour, the basic speed limit of this state governs all motor vehicles at all times: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." (Veh. Code, § 510.)

This case illustrates at least one of the impelling reasons for the statutory maximum speed of trucks or tractors, with trailers. Trucks and trailers and tractors and trailers do not have the same braking facilities that automobiles have to stop or to check momentum. The driver of an automobile has

but two things to do when he wants to stop—he takes his foot off the power throttle and puts it on the brake pedal. The driver of a combination vehicle has three things to do—first he cuts off his power; secondly, he brakes the trailer with a hand lever in the driver's cab; and, thirdly, he brakes the truck or tractor by applying pressure to a foot pedal in the cab like that in an automobile.

If the truck driver or the tractor driver puts on the foot brake too soon or too hard, the combination vehicle "jack-knifes" and then is hurtled, a great, lumbering, uncontrolled behemoth, sidewise down the road. In the case at bar the tanker jackknifed, and the witnesses describe its progress thereafter as buckjumping and hop-skipping down the highway.

It is vital to the lives and to the safety of people on the highways of this state that the maximum speed of combination vehicles be rigidly controlled. Those who drive to any extent may wonder if the speed limit is not more honored in the breach than in the observance. But whether the law is respected and obeyed, it becomes the duty of the courts of California to apply and enforce it in the decision of cases arising out of accidents in which such vehicles are involved.

In this case it was the province of the jury to apply the basic speed law to all of the conditions surrounding the accident, and to say if Union's driver was traveling at a speed which endangered life or property, even if the speed of the truck and trailer was less than 40 miles an hour.

It was also the province of the jury to determine whether it was negligence for the Union truck and trailer to have been in the middle of the three-lane highway, considering all of the surrounding circumstances. This is so because it was the duty of the driver before moving into the center lane to first ascertain that such movement could be made with safety; that the roadway ahead was clearly visible; and that the center lane was clear of traffic within a safe distance. (Veh. Code, § 526.)

The rules to be used by a reviewing court in testing the power of a trial court to grant judgment notwithstanding the verdict are stated in many California cases. It can serve no useful purpose to here repeat these oft-stated rules. They are set forth, with many supporting cases, in *Estate of Arnold,* 16 Cal.2d 573 [107 P.2d 25].

In this case the verdict of the jury finds substantial support from the evidence, and could have been based upon the violation of any or all of the foregoing Vehicle Code sections.

■ Respondents' contention that section 515 of the Vehicle Code was unconstitutional before the 1947 amendment is also untenable. Before the amendment, the section included within the wording "Any motor truck and trailer," tractors with semitrailers, and tractors with semitrailers and trailers. (*Wood* v. *Moore, supra.*)

Nothing in *Beck* v. *Azcarate, supra,* is to the contrary.

"According to the Vehicle Code, sections 33 and 32.5, these vehicles are defined as follows: 'A "motor truck" is a motor vehicle designed, used or maintained primarily for the transportation of property,' and, 'A "truck tractor" is a motor vehicle designed and used primarily for drawing other vehicles and not so constructed as to carry a load other than a part of the weight of the vehicle and load so drawn.' Inasmuch as both such vehicles are self-propelled and are used for property transportation, it may be considered in referring to such vehicles generally that a truck tractor and semitrailer attached constitute a vehicle which is for general intents and purposes and in appearance a motor truck. . . ." (*Beck* v. *Azcarate, supra.*)

The 1947 amendment brought California law up with technological development of transportation with combination vehicles. Supplementing, and to some extent succeeding trucks towing trailers, truck tractors are now used. A truck tractor comprises a motivepower unit only, with driver's cab and driving controls. A semitrailer is attached to a tractor, and a tractor and semitrailer may tow a trailer. The front end of the semitrailer rides on the tractor. The combination tractor and semitrailer may not exceed 60 feet in length. (Veh. Code, § 697.) Or, providing the combination does not exceed 60 feet in length, it may consist of a tractor and semitrailer and trailer.

A tractor may be detached from a semitrailer at any time, for loading, or for any other purpose, and attached to another semitrailer. This saves loss of use of the tractor while cargo vehicles are loaded or repaired.

The amendment, therefore, continued to limit truck tractors with semitrailers to a speed of 40 miles an hour when their gross weight and load was 25,000 pounds or more. The only change in the law was to apply the prima facie speed provisions of section 511 when the weight of tractors with semitrailers is less than 25,000 pounds. Then they may, subject to the basic speed law and the prima facie speed law, go faster than

40 miles an hour. This put trucks without trailers and tractors with semitrailers on a parity.

It is apparent that there is no legislative discrimination which, before the amendment of 1947, rendered section 515 unconstitutional.

■    This brings consideration of the unusual situation of severance of the issues by judgment notwithstanding the verdict and granting a new trial on the cross-complaint only. Trial courts have more discretion in granting motions for new trials than nonsuits, directed verdicts and judgments notwithstanding verdicts. No abuse of discretion appears, and this order will be affirmed, without, however, approving its effect of severing the issues for trial.

Finally it is necessary to determine whether the verdict shall stand and the trial court enter judgment in accord with it, or the case be retried as a whole.

Evidence is in the record of violation of the Motor Vehicle Code by the tanker as well as the truck and trailer. The tanker was equipped with a tachograph. This instrument registered and recorded the speed of that vehicle and shows that it was going about 42 miles an hour just before the accident. The driver testified that in his opinion he was going about 35 miles an hour. And it is to be remembered that the weight of the tanker was 78,000 pounds. The gross weight of any combination vehicle is limited to 76,800 pounds. (Veh. Code, § 705.)

Whether the speed of plaintiff's or of defendant's vehicle was the proximate cause of the damage, or was a bar to recovery because of contributory negligence of either driver, were jury questions. No instructions on speed were offered to the court, or were given to the jury. The jury should have been fully and adequately instructed relative to speed, and other provisions of the code pertinent or relevant to the issues.

In a civil case it is not prejudicial error for a trial judge to fail to instruct of its own motion on any subject not specified in section 2061 of the Code of Civil Procedure. (*Perry·* v. *City of San Diego,* 80 Cal.App.2d 166 [181 P.2d 98].) In criminal cases, it is the duty of the trial court to instruct, of its own motion, on matters vital to a proper consideration of the evidence by the jury. (*People* v. *Holt,* 25 Cal.2d 59 [153 P.2d 21], and cases cited.)

When a judgment notwithstanding the verdict is reversed, the trial court will be directed to enter judgment on the verdict, no good reason appearing why the appellate court

should grant a new trial. (*Lauritsen* v. *Goldsmith,* 99 Cal. App. 671 [279 P. 168].) But upon reversal of such a judgment, the granting of a new trial is within the discretion of the appellate court. (2 Cal.Jur. 994; *Robinson* v. *Muir,* 151 Cal. 118 [90 P. 521] ; *McNeely* v. *Hill,* 52 Cal.App. 184 [198 P. 427].) An appellate court may order judgment only in a proper case, and may direct a new trial where the action seems to demand it. (*Alden* v. *Mayfield,* 164 Cal. 6 [127 P. 45].)

This court is not satisfied that all of the evidence and the effect thereof was fully and fairly considered by the jury, and exercising its discretion, has determined to direct a new trial on all of the issues.

Having come to this conclusion it is unnecessary to determine whether it was error to grant a new trial on the crosscomplaint only.

The order granting a new trial as to part of the issues is affirmed, the judgment notwithstanding the verdict is reversed, the appeal from the order granting the motion for judgment notwithstanding the verdict is dismissed, and the cause is remanded for new trial on all of the issues.

White, P. J., and Doran, J., concurred.