[Civ. Nos. 20642, 20935. Second Dist., Div. Two. Nov. 28, 1955.]

C. SLOAN, Respondent, v. FREDERICK W. STEARNS et al., Appellants.

[Two Cases.]

*Assigned by Chairman of Judicial Council.

Gene L. Rubin and Irwin Gostin for Appellants.

Lawrence L. Light and Joseph Friedman for Respondent.

ASHBURN, J. pro tem.*—Defendants appeal from a judgment in favor of plaintiff and an order denying their motion for judgment notwithstanding the verdict. The appeals were initially separate but they have been consolidated and the transcripts, which supplement each other, are to be treated as one. Plaintiff C. Sloan, an assignee of Attorney Lawrence L. Light, sued defendants Frederick W. Stearns and Fairway Construction Company, Inc., for recovery of attorney fees for services rendered them by Light. The complaint was in three counts but nonsuit was granted as to the first and third causes of action, and the judgment rests upon the second

---

*Assigned by Chairman of Judicial Council.

which is a common count for the reasonable value of legal services rendered. Mr. Light testified that the value of the same was $5,000 and the jury appraised them at $3,500.

■ The appeals are presented upon settled statements which are so brief as to make it difficult to determine the theories upon which the respective parties tried the case. But we are bound to assume that enough appears to enable us to decide whether reversible error was committed and we must make our ruling upon the basis of what affirmatively appears in the record. (Rule 52 of Rules on Appeal; *Estate of Pierce*, 32 Cal.2d 265, 274 [196 P.2d 1]; *Utz* v. *Aureguy*, 109 Cal.App.2d 803, 806-807 [241 P.2d 693].)

In response to plaintiff's claim for the reasonable value of legal services rendered, the defendants seem to have relied upon (1) a denial that plaintiff rendered any such services, (2) a claim that services of any nature rendered by him are governed by two written contracts providing for payment upon a contingent basis and that the event giving rise to the right to compensation never occurred, and (3) that, assuming that plaintiff was their attorney, he forfeited any right to compensation by acquiring a secret adverse interest in the subject matter of his employment and also secretly represented the other parties in negotiations conducted on behalf of defendants.

Viewing the merits upon the basis of evidence favorable to plaintiff-respondent,[1] it appears that initially Mr. Light was employed to assist in raising finances for defendants to enable them to carry out a Federal Housing Administration building project in San Diego. The original employment is covered by agreement of April 8, 1952. It is signed by defendant Stearns, addressed to Mr. Light and reads as follows: "This will serve to confirm our oral understanding that you are to receive from me for services rendered the sum of $5,000, provided that you are successful in obtaining for me a sum of approximately $50,000 to be used in connection with a certain F. H. A. building project in San Diego, California.

"A contract for the aforesaid building project has been awarded to me and consists of approximately 300—1, 2 and 3 bedroom units to be built on a 25 acre site in San Diego.

"If you are successful in obtaining the aforesaid sum of money for me, and it is accepted by me, the sum of $5,000.00,

---

[1] *Estate of Isenberg*, 63 Cal.App.2d 214, 216 [146 P.2d 424].

which will be due and payable to you by me, shall be paid to you out of profits realized by me on this said building contract, and shall be paid at such time as the buildings are completed.''

Later, defendants employed Light to represent them generally as their attorney, and it was then specifically agreed that this was to be a separate employment and the compensation not to be contingent or conditional in any respect. Considerable services were performed under this employment and, as above stated, were valued by Mr. Light as a witness in the sum of $5,000. The relationship of attorney and client was terminated on or about August 1, 1952, when defendant Stearns sought a modified agreement providing a new formula for computing Light's compensation for services in the matter of financing. At Stearns' request Mr. Light, who was then attorney for both Stearns and his co-defendant Fairway Construction Company, Inc.,[2] drew an agreement which bears date, August 8, 1952, and contains the following:

''WE, FAIRWAY CONSTRUCTION COMPANY, INC., a corporation, do hereby acknowledge that LAWRENCE L. LIGHT, Attorney-at-Law, has heretofore rendered certain legal services for us, and has further devoted time and energy to obtain certain parties who have evidenced their interest in advancing certain monies by way of loan and/or joint venture to the extent of approximately Fifty Thousand ($50,000.00) Dollars. the said monies, it is contemplated, will be made available to us by way of loan as to part, and investment in a joint venture with us as to part. All of said monies to be used by us in connection with the performance of a contemplated contract with OCEAN HEIGHTS DEVELOPMENT COMPANY, a corporation, (now in the process of being formed and organized) for the construction by us of a building project consisting of approximately Three Hundred (300) Units in the Linda Vista District, in San Diego, California.

''In the event that the aforesaid financing is made available to us, and accepted we shall pay the said Lawrence L. Light for services he has rendered as aforesaid, remuneration on the following basis.'' Here follows a formula for computation of compensation which concludes with this language: ''It being the intention of the parties hereto that the said Lawrence L. Light is in no event to receive a sum in excess

---

[2] No differentiation is drawn by counsel for either side between defendant Stearns and his company. They are treated as one.

of the sum of Ten Thousand ($10,000.00) Dollars for his said services rendered." Next appears a formula for determining what shall be considered monies realized by defendants upon their construction contract, and "That it is contemplated that this construction contract will be entered into by Fairway Construction Company, Inc. with Ocean Heights Development Company, a corporation now being organized. However, in the event that said contract is entered into with Frederick W. Stearns as an individual, this agreement shall nevertheless be enforcible as applicable to the said Frederick W. Stearns, and is therefore to be executed by the said Frederick W. Stearns individually, as well as the said corporation.

"It is further specifically understood that our said attorney has no further obligation to represent us as a legal representative, or otherwise, other than to do whatever may be necessary to secure the availability of approximately Fifty Thousand ($50,000.00) Dollars as a joint venture and/or loan, and which said monies are accepted by us."

There is no ambiguity about this document. It plainly covers compensation for Mr. Light's legal services as well as his financing efforts, and places all services upon a contingent basis. To that extent it constitutes a novation (Civ. Code, §§ 1530-1532). The event calling for payment never occurred, and that fact is the ultimate basis of defendants' insistence upon the two writings as the sole contracts of employment. ■ But defendants' own conduct prevented the occurrence of the condition which would perfect the right to compensation under the terms of the agreement because they later refused to enter into the construction contract which was the source from which monies to pay Light were to be derived. Mr. Light so testified, and there is no denial of the fact. This refusal entitled him to treat his contract as repudiated and to proceed in *quantum meruit*, as he did. ■ "A party to a contract cannot take advantage of his own act or omission to escape liability thereon. (17 C.J.S. § 468, p. 966; 12 Am.Jur. § 381, p. 957.) ■ Where a party to a contract prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability. [Citing cases.]" (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 371 [210 P.2d 757]. See, also, 12 Cal.Jur. § 229, p. 452.)

The foregoing discussion proceeds upon the assumption that the contracts of April 8th and August 8th are binding

agreements. But there was in fact no mutuality in either of them. The phrase "and it is accepted by me" was inserted in the April 8th contract at the request of Stearns who was told by Light at the time that "the interlineation rendered Defendants' obligations under the instrument illusory and the instrument thus of no legal effect"; but Stearns insisted, Light yielded, and viewing the matter in retrospect testified that he " 'was a fool as a lawyer,' he guessed, to allow such interlineation." The August 8th agreement has the words "and accepted" interlined in the second paragraph, making it read as follows: "In the event that the aforesaid financing is made available to us, and accepted we shall pay the said Lawrence L. Light for services he has rendered as aforesaid, remuneration on the following basis: . . ." In the last paragraph Light is relieved of obligation to render further legal or other services except "to do whatever may be necessary to secure the availability of approximately Fifty Thousand ($50,000.00) Dollars as a joint venture and/or loan and which said monies are accepted by us." The latter phrase being interlined and initialed. The settled statement summarizes the Light testimony as follows: "That at the time this said instrument of August 8, 1952, was signed by the parties, the defendant, Stearns, insisted that the interlineation 'and the monies are accepted by us' be inserted therein. Mr. Light testified that at that time he pointed out to the defendant, Stearns, that this insertion was nullifying the entire effect of the instrument as constituting a binding agreement upon the defendant, Stearns, in that he could arbitrarily refuse to accept the monies which had been secured for him by Mr. Light."

It will be observed that in neither writing is the exact amount of the loan specified, and that no terms or conditions whatever are outlined; that the language inserted at Stearns' insistence does not say in substance or effect that the amount or terms of the loan shall be satisfactory to him, that there is no basis for construing this as a "satisfaction" contract, and that it lacks mutuality because it leaves Stearns in position to determine at his own volition whether he will pay for services rendered by Light; it leaves him in position to do just what he did do, namely, refuse to proceed with the construction project and thus render it impossible for Light to perform his part of the contract. ▮ "Where the parties assume to make a contract in which one's promise is the consideration for the promise by the other, the promises

must be mutual. To be obligatory on either party, the contract must be mutual and reciprocal in its obligations. One who promises to do a thing only if it pleases him, is not bound to perform. (*Central Oil Co.* v. *Southern Refining Co.*, 154 Cal. 165 [97 P. 177]; 12 Cal.Jur.2d 317, § 114.) Where a contract imposes no definite obligation on one party to perform, it lacks mutuality of obligation. It is elementary that where performance is optional with one of the parties no enforceable obligation exists. [Citing cases.] This type of promise is illusory and does not result in a binding agreement even if unconditionally accepted." (*Lawrence Block Co.* v. *Palston,* 123 Cal.App.2d 300, 308 [266 P.2d 856].) To the same effect see *Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660 [277 P. 519]; *Chas. Brown & Sons* v. *White Lunch Co.*, 92 Cal.App. 457, 461 [268 P. 490]; 1 Williston on Contracts (rev. ed.) pp. 123-128, 349; 17 C.J.S. § 100, p. 445. In 12 American Jurisprudence, section 66, page 558, it is said: "A reservation to either party to a contract, of an unlimited right to determine the nature and extent of his performance, renders his obligation too indefinite for legal enforcement." Authorities cited by appellant[3] are not to the contrary. In the main they are instances in which the contract was construed to require performance to the satisfaction of one of the parties.

 In signing these agreements Light elected to rely upon defendants' good faith, knowing and stating that he had no legally enforcible agreement, and when defendants refused to make the basic contract there was no estoppel of Light to rely upon such want of mutuality and fall back on a claim for the reasonable value of his services, for he had explained to Stearns that his own insistence upon the interlineations in the contracts rendered the same legally unenforcible.

It thus appears that the evidence warranted a verdict in plaintiff's favor upon either one of two theories. Appellants do not claim insufficiency of the evidence except indirectly. Relying upon their view that Light was entitled to no compensation because the condition of the written instruments had not been fulfilled, they made a motion for judgment

[3] 9 Cal.Jur.2d, 256, 268, 269, 272; *Smith* v. *Schiele*, 93 Cal. 144 [28 P. 857]; *Ball* v. *California Conserving Co.*, 189 Cal. 326 [207 P. 1011]; *Lindley* v. *Fay*, 119 Cal. 239 [51 P. 333]; *Bruner* v. *Hegyi*, 42 Cal.App. 97 [183 P. 369]; *Middleton* v. *Findla*, 25 Cal. 76; *Leventritt* v. *Cowell*, 21 Cal.App. 597 [132 P. 627].

*non obstante veredicto,* which was denied, and they now assert error in that ruling. ■ That motion will not lie where, as here, there was no previous motion for a directed verdict. (*Estate of Caldwell,* 216 Cal. 694, 695 [16 P.2d 139] ; *Fortier Transp. Co.* v. *Union Packing Co.,* 96 Cal.App.2d 748, 751 [216 P.2d 470] ; 7 Cal.Jur. 10-Yr. Supp. (1945 Rev.) § 30.7, p. 282.) The case of *Bolar* v. *Maxwell Hardware Co.,* 205 Cal. 396 [271 P. 97, 60 A.L.R. 429], cited by appellant, is not to the contrary. ■ Moreover, appellants' reliance upon respondent's failure to deny, pursuant to section 448, Code of Civil Procedure, the agreements, both of which were attached to their answer, avails them nothing because the absence of such an affidavit admits nothing except genuineness and due execution. All matters in confession and avoidance are available to the plaintiff under the implied replication to new matter in the answer. (*Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773, 777 [249 P.2d 24] ; *Baird* v. *Pacific Electric Ry. Co.,* 39 Cal.App. 512 [179 P. 449] ; 21 Cal.Jur. § 114, p. 168.) Specifically, plaintiff's failure to file such an affidavit does not preclude him from relying upon defendants' refusal to enter into the construction contract.

The major contentions advanced by appellants herein concern the giving and refusal of certain specific instructions. ■ There was no error in refusal to give defendants' Request Number 54, which reads as follows: "You are instructed that a contract whereby one person employs another to obtain a loan of moneys for the first person, is not rendered invalid by a provision that no fee is to be paid unless the first person accepts the loan." This instruction assumes the existence of mutuality which, as above shown, did not exist in the written contracts.

In response to plaintiffs' claim that Light's legal services were not controlled by the written contracts, defendants undertook to defeat recovery upon the ground of dual relationship which the attorney was claimed to have occupied and which was not disclosed to, consented to, or known by the defendants. There is evidence in the record to the effect that although Light's employment originally was not that of an attorney, it soon became such; that Light procured and produced Sam Mitchell and Victor Brooks as prospective lenders; that he, himself, was to participate in the making of the loan and that fact was not disclosed to defendants;

that his activities as attorney included many conferences with Mitchell; that he was then attorney for Mitchell and Brooks, as well as defendants, and did not disclose the fact to defendants; that he became interested with Mitchell and Brooks in purchasing the land upon which the project was to be built, and this fact was not disclosed to defendants until August 1st; that he was to receive a fee of $5,000 from Mitchell and Brooks and never disclosed that fact until August 2d or 3d.

The only pertinent instruction given was Number 23: "An attorney at law is not prohibited from entering into any business transaction with a client, touching or not touching the subject matter professionally entrusted to him by his client. Such transactions are, however, subject to close scrutiny, and they must be shown to be fair in all respects."

If proper requests had been made defendants would have been entitled to further instructions upon the subject. Appellant's counsel specifies proposed instructions Numbers 43, 45, 47 and 55 as requests which were improperly refused. Of course, any error in rejecting other proffered instructions which are not discussed in appellant's brief is waived. (*Kritzer* v. *Citron*, 101 Cal.App.2d 33, 39 [224 P.2d 808].) Those discussed by counsel, bearing the above numbers, were all faulty for one reason or another and hence were properly denied.

Number 43 reads as follows: "It is an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. By virtue of this rule, *an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests.* Nor does it matter that the intention and motive of the attorney are honest." (Emphasis added.) This instruction would require an attorney to devote his entire energies to the particular client's interests to the exclusion of all others. He owes no such obligation under a general employment which does not specifically call for his entire time. And the attorney had no such exclusive employment here. True, the proffered instruction was copied from *Anderson* v. *Eaton*, 211 Cal. 113, at 116 [293 P. 788]. But that fact does not qualify it as a proper instruction to a jury. The court was

not considering a jury instruction in that case. "In concluding this subject we call attention again that it is a dangerous practice, and one not to be followed, to take excerpts from opinions of the courts of last resort and indiscriminately change them into instructions to juries. The reasons are too obvious to require further comment." (*Rosander* v. *Market Street Ry. Co.*, 89 Cal.App. 710, 718 [265 P. 536].) "It has often been decided by the supreme court that the language used by the court in writing an opinion should not be used as an instruction. Assuming, without deciding, that the proposed instruction was a correct statement of the law, it is patent that it was but a mere abstract principle of law which is embodied in and forms a part of the basis for the broader instructions which were given by the court." (*People* v. *Russell*, 80 Cal.App. 243, 245 [251 P. 699].) Accord: *Jones* v. *Bayley*, 49 Cal.App.2d 647, 654 [122 P.2d 293]; *Reagh* v. *San Francisco Unified Sch. Dist.*, 119 Cal.App.2d 65, 73 [259 P.2d 43]; *McGeorge* v. *Charles Nelson Co.*, 107 Cal.App. 148, 152 [290 P. 75].

One of the reasons for care in adopting a court opinion verbatim as a jury instruction is that its abstract or argumentative nature may have a confusing effect upon the jury. In the Anderson case, and in *Hammett* v. *McIntyre*, 114 Cal.App.2d 148, 155 [249 P.2d 885] (which uses substantially the same language), the court was speaking of the attorney's obligation with respect to the conduct of a single piece of litigation. The attorney's services in the case at bar did not involve litigation and the statement that "an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests" would be accepted by the jurors as applicable to the facts at bar and would thereby direct their attention to a nonexistent issue, for there was no controversy over the amount of time or energy which Mr. Light had devoted to his client's affairs—it was a question of whether he had breached his obligation of loyalty by assuming inconsistent duties. ■ There was no duty resting upon the judge to modify the defendant's request and then give it as modified. If requested instructions are objectionable in any respect a judge in a civil case has performed his full duty in denying them. (*Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1]; *Bertolozzi* v. *Progressive Concrete Co.*, 95 Cal.App.2d 332, 337 [212 P.2d 910].)

██ Request Number 47[4] states that an attorney must not buy an interest in the thing in controversy adverse to his client, but it omits the important qualification that this is true only if the client does not have full knowledge and give free consent.

Request Number 44[5] consists of a series of generalities which unexplained are inappropriate to a jury instruction.

Request Number 55 quotes one of the rules of professional conduct prescribed by the State Bar. Sound though it be, it is a generality which is not appropriate to a jury instruction.

Requests Numbers 32, 38 and 39 constitute a series of proposed instructions concerning Light's duty as an attorney to state the August 8th agreement in unambiguous terms. As heretofore indicated, the contract is not ambiguous and hence these instructions are inappropriate. ██ Moreover, if there were any ambiguity in the instrument the judge should not have left it to the jury to determine at large what the ambiguity was and then to place upon it the proper construction. If such ambiguity existed, the trial judge should instruct as to the specific point to be decided by the jurors, the respect in which the instrument was ambiguous, and the exact question which they should determine. (See *O'Connor* v. *West Sacramento Co.*, 189 Cal. 7, 18 [207 P. 527].)

██ Refusal of instruction Number 56, which undertakes to define the phrase ''practice of law'' was not improper. The instruction is too general in its terms to serve as a guide to jurors. Moreover, the request was directed at the April 8th agreement, according to appellants' opening brief, but that instrument is not ambiguous, it did not call for any legal services and its construction did not present a jury question. Appellants cite *Brydonjack* v. *Rieck*, 5 Cal.App.2d 219, 223 [42 P.2d 336], and *Carlson* v. *Lantz*, 208 Cal. 134, 137 [280 P. 531], but they do not sustain their position.

Refusal of Request Number 37 was not error. It says in substance that an attorney's contract for additional compensation cannot be upheld unless the additional compensa-

---

[4]It would add nothing to the body of the law or the clarity of the decision to set forth the text of each of the instructions with which we are required to deal in this case, and we therefore content ourselves with observations which will be understandable to counsel.

[5]Counsel specified No. 45 as one of those improperly refused, but discuss No. 44.

tion is based upon services not contemplated in the original contract. The instruction was not appropriate. The new agreement (August 8) was a novation, covering both legal and financing services, and was made at the specific request of defendant Stearns.

Request Number 35 is inapplicable and its terms calculated to be confusing to the jury.

Request Number 33 says that an attorney may not arbitrarily repudiate a contingency agreement and claim a reasonable fee instead. This could apply only to the agreement of August 8th, because that of April 8th did not call for legal services. Nor do appellants raise any question of the repudiation of the August 8th agreement except in the sense that plaintiff is bound by it regardless of other considerations, a position already shown to be erroneous. Defendant Stearns did not deny the Light testimony that he, Stearns, in late August refused to make the construction agreement upon which the August 8th contract rested.

Requests Numbers 48, 49, 50, 51, 52 and 53 relate to the presumption against an attorney who makes a new contract with his client during the relationship of attorney and client. Number 53 is not good law, for it leaves to the jurors the question of whether the proof is "*the clearest and most satisfactory evidence.*" (See *Edmonds* v. *Wilcox*, 178 Cal. 222, 224 [172 P. 1101].) The other instructions above mentioned seem to be abstractly correct, but they are directed toward striking down the contract of August 8th upon the ground of want of consideration, fraud or its equivalent. Such instructions are pertinent only upon the assumption that the relationship of attorney and client actually existed; if that be so, then the destruction of the agreement of August 8th leaves plaintiff in position to claim the reasonable value of his services (subject to defenses of fraud and the like), and so the refusal of these instructions could not be prejudicial.

Requested instructions 40, 41, and special interrogatory 42. Number 40 presupposes a compromise of an existing controversy. It is inapplicable. Number 41 is but a continuation of 40 and also assumes a nonexisting dispute and compromise thereof. The giving of the proposed special interrogatory as to whether the agreement of August 8th became the sole instrument under which Mr. Light would be entitled to recover any fee from defendants improperly propounds a question of law for the jurors. The giving of special interrogatories lies in the discretion of the trial

court (24 Cal.Jur. § 155, p. 904; *House Grain Co.* v. *Finerman & Sons,* 116 Cal.App.2d 485 [253 P.2d 1034]). It does not appear that there was error in rejecting the proposed interrogatory.

The complaint of refusal to give proposed instruction 34 can avail appellants nothing. That instruction is BAJI 31-A, concerning the effect of testimony given upon deposition. The opening brief argues that it should have been given because of conflicts between evidence given by Mr. Light upon deposition and at the trial. The subject was adequately covered by instructions actually given, namely, Numbers 15, 16, 17, 19 and 20.

Appellants next complain of the giving of instructions 28, 29 and 31, which in substance state that in the absence of a special agreement as to compensation an attorney is entitled to recover the reasonable value of his services rendered. There was no error in 28 or 29. Number 31 should not have been given because it left it to the jury to say whether or not plaintiff could recover under the writings of April 8th and August 8th, but as we have shown he was not required to stand upon those writings, indeed could not recover thereon, and the verdict for the sum of $3,500 cannot, upon the record before us, be said to have been computed upon the contingent basis stated in either of the written instruments. The instruction was not prejudicial.

 Interrogatory Number 30 was as follows: "Did plaintiff's assignor render legal services to defendants? If your answer is yes, what is their reasonable value?" This left to the jurors the determination of the question of what constitutes legal services, and should not have been given, but their verdict shows that they undoubtedly answered it in the affirmative. The evidence warrants no other inference, and it cannot be said that any prejudice ensued from the propounding of this interrogatory.

The next complaint is made of the giving of instruction Number 27, which enumerates factors to be taken into consideration in determining what constitutes reasonable compensation for an attorney's services. It contains an inappropriate reference to "the nature of the litigation" but it was not misleading or under all the circumstances prejudicial.

Appellants complain because plaintiff was permitted to have defendant Stearns read to the jury paragraph IV of the fourth affirmative defense, upon the theory that it constituted an admission that Mr. Light did represent defendants

as their attorney until about August 8, 1952, and the court refused to permit defendants' counsel to have the witness read that portion of the second affirmative defense alleging that the writings of April 8th and August 8th constituted the only agreements under which Mr. Light was retained or rendered legal services for defendants. There was no objection to the reading of said paragraph IV in evidence. If there had been the court presumably would have excluded same because the law which permits a defendant to rely upon inconsistent defenses precludes their being used against him by way of admission. (*Oppenheimer* v. *Deutchman,* 119 Cal.App.2d 450, 453 [259 P.2d 457]; *Jones* v. *Tierney-Sinclair,* 71 Cal.App.2d 366, 373 [162 P.2d 669].) Counsel's silence and implied assent to the introduction of this improper evidence did not open the way for additional incompetent matter, for, as said in *Laursen* v. *Tidewater Assoc. Oil Co.,* 123 Cal.App.2d 813, 816 [268 P.2d 104]: "Failure to object to improper questions on direct may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so-called 'open the gates' argument is a popular fallacy." Of course, the same considerations apply to improper questions on cross-examination followed by attempted eliciting of like improper matter on redirect.

Appellant also advances claims of error in rulings upon evidence. We have examined each of them and find no prejudicial error in any of the instances to which counsel refer. Likewise, there was no error in denying the motion for new trial or in denying a motion for judgment on the pleadings, or in denying the motion for judgment notwithstanding the verdict.

The judgment and the order denying motion for judgment notwithstanding the verdict are affirmed.

McComb, Acting P. J., concurred.

FOX, J.—I dissent.

The gravaman of plaintiff's case was the performance of legal services by his assignor for which recovery of a reasonable attorney's fee was sought. Defendants contested the right to any fees, asserting in their affirmative defense that the claimed services were performed at a time when plaintiff's assignor had an interest in the transaction for which he was employed adverse to their own and also secretly

represented the other parties thereto. If this was so, the right to recover attorney's fees would be forfeited. (*Anderson v. Eaton*, 211 Cal. 113, 116 [293 P. 788].)

The majority opinion concedes there was evidence to support defendants' theory of the case. Defendants proffered some ten instructions relating to the duty of an attorney to refrain from assuming a position in any transaction in which he is employed which places him either in conflict with his clients or divides his loyalties. The single instruction given is Number 23, which reads:

"An attorney at law is not prohibited from entering into any business transaction with a client, touching or not touching the subject matter professionally entrusted to him by his client. Such transactions are, however, subject to close scrutiny, and they must be shown to be fair in all respects." This does not touch the essence of the case, which was embodied in defendants' instruction Number 43, which the judge declined to give. The majority opinion concedes that defendants were "entitled to further instructions upon the subject" but maintains that the tendered requests "were all faulty for one reason or another and hence were properly denied." I cannot agree.

Instruction Number 43 reads: "43. It is an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. By virtue of this rule, an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. No[r] does it matter that the intention and motive of the attorney are honest." The majority opinion states, in justifying the refusal, that "this instruction would require an attorney to devote his entire energies to the particular client's interests to the exclusion of all others. He owes no such obligation under a general employment which does not specifically call for his entire time." But this criticism of Number 43 is completely at variance with any proper construction or interpretation of the instruction. The majority opinion makes the mistake of interpreting the second sentence of the proposed instruction out of context and without regard to its plain meaning, thus distorting its import into a requirement that an attorney must devote all his energies "to the particular client's interests to the exclusion of all others."

But that is clearly not the sense of the instruction. It does not purport to limit an attorney's activities to one particular client's affairs. The instruction unequivocally asserts (1) that it is a violation of an attorney's duty for him to place himself in a relationship antagonistic to his client's interests without the latter's assent based upon full knowledge of the facts; (2) that this is so regardless of the honesty of the attorney's motives; and (3) by virtue of this rule, an attorney is precluded from assuming a position which would interfere with his duty to devote his entire energies to his client's interests. It defines the duty of an attorney to his client, and the circumstances and conditions under which he may represent interests that are antagonistic to or in conflict with those of his client. (*Anderson* v. *Eaton,* 211 Cal. 113, 116 [293 P. 788]; *Hammett* v. *McIntyre,* 114 Cal. App.2d 148, 155 [249 P.2d 885].)

It is thus patent that not only is instruction Number 43 an accurate and impeccable statement of the law but an examination of *Anderson* v. *Eaton, supra,* discloses that the instruction is taken virtually verbatim from the language of the opinion. The Anderson case affirms the basic principle that it is an attorney's duty to protect his client's interest in every possible way and that he violates that duty if he assumes a position adverse to his client without the latter's free and intelligent consent given after full knowledge of the circumstances. While it is true that language from judicial opinions divorced from their context may not always be safely given as an instruction to the jury, and as an *indiscriminate* practice is not countenanced (see *Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655, 679 [283 P.2d 91]), nevertheless its use in an instruction is unobjectionable when it is lucidly formulated in a simple proposition of law which fully covers the issues and is applicable to the evidence. Such was the nature of instruction Number 43. It would be unfortunate to hold that a clearly worded special instruction could not be given simply because it derives from the language used by a reviewing court although it is otherwise unobjectionable and no other instruction on the subject is given.

The majority purports to distinguish the Anderson case by suggesting that there "the court was speaking of the attorney's obligation with respect to the conduct of a single piece of litigation." It continues: "The attorney's services in the case at bar did not involve litigation . . ." This is a distinction without a difference. The language of the

Anderson case cannot be reduced to such narrow compass. The plaintiff is here suing for legal services, and during the entire period in which such services were rendered the attorney owed the obligations of a fiduciary committed to the exacting standards of utmost good faith toward his clients. (*Kornbau* v. *Evans,* 66 Cal.App.2d 677, 685 [152 P.2d 651]; *Sanguinetti* v. *Rossen,* 12 Cal.App. 623, 630 [107 P. 560].) The fiduciary concept applies regardless of whether litigation is the object or in contemplation when the attorney is engaged and suffuses all his professional relations with his clients. In view of the broad scope of the activities encompassed in the term 'practice of law,' to attenuate the attorney's fiduciary duty or ethical standards and relax their application in a situation where litigation is not involved would be promotive of mischief in the attorney-client relationship. As pointed out in *People* v. *Merchants Protective Corp.,* 189 Cal. 531, 535 [209 P. 363]: " 'But in a larger sense it [the practice of law] includes legal advice and counsel and the preparation of legal documents and contracts by which legal rights are secured although such matter may or may not be depending in a court. . . . It is common knowledge . . . that a large, if not the greater part of the work, of the bar today is out of court, or office work. Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds . . . are activities which have been long classed as law practice . . .' " In all of these professional activities, no less than in his advocacy in court, unalloyed loyalty of counsel to his client must be ever present and prevail against the beckoning of personal advantage.

Defendants were clearly "entitled to have this instruction, embodying their theory of the case with substantial support in the evidence, presented to the jury." (*Stout* v. *Southern Pac. Co.,* 127 Cal.App.2d 491, 503 [274 P.2d 194]; *Bickford* v. *Pacific Elec. Ry. Co.,* 120 Cal.App. 542, 548 [8 P.2d 186].) Not a single instruction was given to enlighten the jury on the subject of an attorney's obligation to abstain from compromising his duty to his client by the avoidance of a situation which would bring his interests into conflict with theirs. Left without guidance or a criterion on this vital point, the jury might find the attorney had or represented interests that were adverse to his client and yet not perceive that his right to be paid for services rendered in the transaction could

thereby be foreclosed. For these reasons, I am of the opinion that the effect of the erroneous refusal of this instruction was so prejudicial as to remove the case from the purview of section 4½ of article VI of the California Constitution and compels a reversal of the judgment.

A petition for a rehearing was denied December 21, 1955, and appellants' petition for a hearing by the Supreme Court was denied January 25, 1956. McComb, J., did not participate therein.