BISHOP, P. J.
 

 The end did not justify the means. A desire to bring about the conviction of the defendant did not excuse the introduction of immaterial and prejudicial evidence concerning previous, disconnected, misdemeanors, and it was error to approve the questions concerning them. The judgment, by which the defendant was sentenced to imprisonment in the city jail for 30 days, must be reversed.
 

 The charge made against the defendant was that he had been in a state of intoxication in a place open to the patronage of the public. There was sufficient evidence to warrant the jury’s verdict of “guilty,” but there was also ample evidence that would have supported a verdict of “not guilty.” The errors made, therefore, cannot be said to have been without prejudicial effect.
 

 The defendant, who represented himself at the trial, took the stand and briefly but tersely denied that he had been intoxicated upon the occasion concerning which the prosecuting witnesses had testified. Upon that occasion a physical encounter took place between the defendant and another party, in which two police officers became involved. Quite legitimately, the prosecution took the position that the altercation arose because the defendant was belligerently drunk. He insisted that he was not drunk, but engaged in the brawl because of insulting remarks made by the other party about
 
 *918
 
 his (the defendant’s) wife, who was with him. Up to the close of his direct testimony there was not a word to suggest the matter that was taken up in the cross-examination.
 

 The cross-examination began innocently enough. Deputy City Attorney Doran, representing the People asked: “Were you upset with the Los Angeles Police Department or something?” The defendant’s reply was a denial, supported by the statement that he investigates automobile accidents for a living, and was continually in touch with many police officers and was on friendly terms with them. The cross-examination then followed a normal course, until after a few questions it took this turn: “ Q. You are a private investigator; is that correct? A. That’s correct. Q. Are you licensed with the Police Commission? A. You don’t have to be licensed with the police; licensed by the State of California. Q. The Detective Agency, or whatever they call it, private investigators or something? A. We have a license under the Professional or Vocational Standards, Sacramento. Q. What kind of license do you hold? A. Private investigator. In fact, a combination, private investigator’s license and insurance adjuster’s license. Q. How were you able to get that? A. Pardon? Q. How were you able to get that? A. First you have to have experience in the investigating field. I had been an insurance adjuster prior. After the Police and Sheriff’s Office and the D. A.’s Office and the City Attorney’s Office clear you, the record then goes to the FBI. They spend time going through your complete record, through history, and when Sacramento sends word down, here you are to take an examination. You take the examination, which includes four hundred questions, and you answer them and if you pass, you are granted a license. Q. What do you mean the Police Department clears you and the City Attorney’s Office clears you? A. You have to go down and file fingerprints and photographs and everything else with the Police Department, and they apparently check the records to see if you have any record or package against you that will be derogatory, such as you will not be fitted. Q. You don’t have any such record; you are okayed and fitted ? A. Apparently so, I was granted a license. Q. But you do have such a record, don’t you? A. I beg your pardon? Q. You do have such a record? A. I do not, sir. Q. Never been arrested? A. I didn’t say that, sir. Defendant Chandler: I ask that that is irrelevant and immaterial, that question and I object to that type of questioning. It has no bearing on this case. The Court : Overruled. Q. By
 
 *919
 
 Mr. Doran : You were arrested for plain drunk in ’55, weren’t you? A. Yes, I was. Q. The 13th of June? A. Yes, I was. Q. In 1938 you were convicted of petty theft, weren’t you? A. I was not. The case of plain drunk against me was dismissed at that time. Q. What about the petty theft? A. Never had a case of petty theft against me in my life. Q. Walter Robert Chandler ? A. Not me, sir. Must be some other party. Q. A $45 fine? A. No, sir. Nothing like that has ever occurred to me. Q. You have been checked with the FBI though? A. That’s my understanding, sir. Q. Do you know your FBI number? A. No, no recollection. Q. How long have you been in Los Angeles? A. Since 1938. Q. You came from El Paso, Texas, in 1938, didn’t you? Defendant Chandler: Your Honor, this line of questioning is irrelevant and immaterial about any prior-The Court : Well, you brought it up, otherwise it would not be. If it hadn’t been for your bringing it up, you have opened the door. The objection is overruled. Defendant Chandler: Well, your Honor, I made the objection when this gentleman asked me if I had ever done anything which was derogatory such that I would not receive a license as a private investigator, and I told him no, sir, because I have received a license as a private investigator, so obviously I have never done anything derogatory that would cause a license not to be issued. The Court : This goes to your credibility. The objection is overruled. Answer the question.” The circumstance that subsequently the defendant admitted, and gave an explanation of, his Texas conviction, in nowise justifies the rulings made.
 

 In the first place, the whole matter of defendant’s possession of a license as a private investigator, and “How were you able to get that?” were quite immaterial, and although no objection was made to it, or to the next few questions along the same line, the objections when made should have been sustained. As stated in
 
 Laursen
 
 v.
 
 Tidewater Assoc. Oil Co.
 
 (1954), 123 Cal.App.2d 813, 816 [268 P.2d 104, 105, 106], and quoted in
 
 Sloan
 
 v.
 
 Stearns
 
 (1955), 137 Cal.App.2d 289, 304 [290 P.2d 382, 392]: “Moreover, legitimate cross-examination does not extend to matters improperly admitted on direct examination. Failure to object to improper questions on direct may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so-called ‘open the gates’ argument is a popular fallacy.” If this is so when the door was opened on direct, how much more
 
 *920
 
 true it is when the answers to questions under cross-examination give the pressing prosecutor the opening he seizes.
 

 Moreover, no door was opened by the defendant. He did not say that he had never been arrested. His reply, called for by the questions put to him, was that his record had been examined and he had been O.K.’d for a license. The belated objection to questions concerning an arrest (no conviction) for plain drunk in 1955, and for petty theft in Texas in 1938, should have been sustained. There was no justification for the trial court’s comments: “you brought it up,” “you have opened the door.”
 

 Nor was there any basis for the trial court’s statement, in ruling on the objection: “This goes to your credibility.” A witness may be impeached by proof that he has been convicted of a felony, but not by evidence of a misdemeanor conviction, let alone a mere arrest. This is specifically stated in section 2051, Code of Civil Procedure
 
 (People
 
 v.
 
 Hamilton
 
 (1948), 33 Cal.2d 45, 50 [198 P.2d 873, 876];
 
 People
 
 v.
 
 Alfonso
 
 (1926), 77 Cal.App. 377, 380 [246 P. 818, 819]). And as already noted, the arrest on the one misdemeanor charge and the conviction of another, were not inconsistent with defendant’s previous testimony.
 

 We find fitting this statement, appearing first in
 
 People
 
 v.
 
 Duvernay
 
 (1941), 43 Cal.App.2d 823, 828 [111 P.2d 659, 661], and again in almost the same words in
 
 People
 
 v.
 
 Lynch
 
 (1943), 60 Cal.App.2d 133, 143 [140 P.2d 418, 423]: “It would be an impeachment of the legal learning of counsel for the people to intimate that he did not know the aforesaid questions and argument to be improper, wholly unjustifiable, and peculiarly calculated to prejudice the substantial rights of the defendant. Such conduct prevents a defendant from having that fair and impartial trial to which, whether innocent or guilty, he is entitled. ’ ’
 

 The judgment is reversed; the case is remanded for a new trial.
 

 Swain, J., and Kauffman, J., concurred.